Michael Dowdall, Appellant, v. Supreme Council of the Catholic Mutual Benefit Association, Respondent.

Insurance (life) — mutual benefit associations — association cannot change constitutional provision that beneficiary shall be assessed according to age when admitted, without his consent.

The defendant, a mutual benefit life insurance association, issued to plaintiff a certificate of membership therein, upon the condition that he should "in every particular while a member of said association comply with all the laws, rules and requirements thereof." Plaintiff also received a printed book containing the constitution and by-laws of defendant. One of the articles of the constitution provided in substance that all members should be assessed according to their age when admitted. The question presented is whether, by subsequent amendment of the constitution or any of the rules or regulations made after the issue of the certificate, defendant may increase the rate of a single assessment against plaintiff. *Held*, that the covenant on the part of plaintiff that he would comply with all the laws, rules and requirements of the association refers only to such as existed at the time he entered into his contract, and that any changes or alterations thereafter made therein, or additions thereto, seeking to modify or alter said contract do not bind him.

*Dowdall* v. *Catholic Mut. Benefit Assn.*, 123 App. Div. 913, reversed.

(Argued October 22, 1909;  decided November 23, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 8, 1908, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. J. Shields* and *Clarence U. Carruth* for appellant. The contract existing for twenty-five years between the plaintiff and the defendant consists of the certificate of insurance and the constitution and by-laws in force at the time the same was issued and delivered to him, the terms and conditions of which contract of insurance are exceedingly clear and definite. (*Bowles* v. *M. R. Assn.*, 220 Ill. 400; *Black* v. *D. R. C. Co.*, 24 N. J. Eq. 455, 474; *Fox* v. *I. H. Co.*, 41 App. Div. 145; *Wood* v. *Sheehan*, 68 N. Y. 368; *Suttler* v. *Hallock*, 160 N. Y. 297; *Vought* v. *E. B. & L. Assn.*, 172 N. Y. 515.) Plaintiff never directly or indirectly consented to any change or alteration of his contract of insurance with the defendant, and the defendant never reserved any right and possessed no power or authority to impair or strike down plaintiff's contract and destroy his vested rights. (*U. S.* v. *Kirby*, 7 Wall. 482; *Wist* v. *Grand Lodge A. O. U. W.*, 22 Ore. 271; *Hobes* v. *Association*, 82 Iowa, 107; *Sieverts* v. *Benefit Assn.*, 95 Iowa, 710; *Van Atten* v. *Modern Brotherhood*, 131 Iowa, 232; *Strauss* v. *Mutual, etc., Assn.*, 126 N. C. 971; *Bragan* v. *Knights*, 128 N. C. 354; *Jones* v. *Casualty Co.*, 140 N. C. 265; *Hadley* v. *A. O. U. W. Lodge*, 1 Tenn. Ch. 413, 430; *Eberts* v. *M. R. F. L. Assn.*, 81 Minn. 116.)

*J. T. Keena* and *Daniel J. Kenefick* for respondent. The amended by-law increasing the rates of assessment which was adopted in good faith and which was obviously necessary to perpetuate the life of the association violated no vested contractual right of the plaintiff and the contrary conclusion reached by the learned trial court. (*Reynolds* v. *Royal*

1909.] Dowdall *v.* Catholic Mut. Benefit Assn. 407

N. Y. Rep.] Opinion of the Court, per Edward T. Bartlett, J.

*Arcanum,* 78 N. E. Rep. 129; *Durfee* v. *O. C. R. Co.,* 5 Allen, 230; *Pain* v. *Society St. Jean Baptiste,* 172 Mass. 310; *Speleman* v. *Supreme Council,* 157 Mass. 128; *Wright* v. *M. M. L. Ins. Co.,* 193 U. S. 657; *Knights of Pythias* v. *Knight,* 117 Ind. 489; Bacon on Ben. Societies [3d ed.], §§ 185, 186; *Crosby* v. *M. R. F. L. Assn.,* 38 Misc. Rep. 708.)

Edward T. Bartlett, J. The defendant was incorporated on the 9th day of June, 1879, under chapter 496 of the laws of that year, entitled "An act to incorporate the Supreme Council of the Catholic Mutual Benefit Association." On the 9th day of July, 1879, a branch of the defendant was organized at Avon, New York.

The plaintiff became a member of the defendant on or about July 9th, 1879, and was thereafter assessed at the rate of $1.10 for each assessment until January 1st, 1904. When he became a member of the defendant the number of assessments that could be made was unlimited. Since January 1st, 1904, the plaintiff has been assessed at the rate of $5.56 for each assessment.

It was admitted on the trial, which took place on the 12th day of June, 1906, that the plaintiff was seventy-four years of age on the 20th day of June, 1905, and that he had paid his dues or assessments up to the date of the trial.

When the plaintiff became a member of the defendant there was issued to him a certificate which stated, in substance, that he was to participate, in case of death, in the amount of two thousand dollars in the beneficiary fund. It also contained the following provision: "This certificate is issued upon the express condition that the said Michael Dowdall shall, in every particular while a member of said association, comply with all the laws, rules and requirements thereof."

On July 2nd, 1883, the defendant issued and delivered to the plaintiff the certificate of membership contained in the findings and which he now holds. It was conceded on the argument that this certificate was precisely like the original, except a slight verbal change as to the name of the council

issuing the same; the first certificate was headed "Grand Council," the second "Supreme Council."

The single question is now presented whether by amendment of the constitution, or any of the rules or regulations, made after the plaintiff had entered into his contract of insurance, it is possible for the defendant to change the rate of a single assessment from $1.10 to $5.56. The trial judge was of opinion that no such change could be made under a fair construction of the contract entered into by the parties and decided in favor of the plaintiff. The learned Appellate Division reversed the judgment entered upon this decision, writing no opinion, but stated in the order of reversal that it was upon the authority of *Mock* v. *Supreme Council of the Royal Arcanum* (121 App. Div. 474) and *Wright* v. *Knights of the Maccabees of the World* (122 App. Div. 904.)

There is a conflict of judicial decisions in the various states on the point now presented, but a careful examination of the cases shows that the great weight of authority is in favor of the position that the original contract cannot be impaired. It would be quite impossible to harmonize the conflicting views of the learned judges, and it remains to be considered whether the decisions of this court have not laid down the rule of law which must now govern, to the effect that the contract of insurance cannot be changed by any act of the defendant.

We have on the one hand the plaintiff standing upon the plain letter and spirit of his contract, and on the other the insistence of the defendant that unless, under its construction of the contract, it is vested with the power to increase the amount of a single assessment, as the exigencies of the company may require, it will be unable to continue its financial life and pay its death losses.

The precise question now presented may be thus stated: The plaintiff received from the defendant a certificate insuring his life for two thousand dollars, which contained a single covenant, as follows: "This certificate is issued upon the express condition that the said Michael Dowdall shall, in every

1909.] DowDall *v.* Catholic Mut. Benefit Assn. 409

N. Y. Rep.] Opinion of the Court, per Edward T. Bartlett, J.

particular while a member of said association, comply with all the laws, rules and requirements thereof." The defendant also delivered to the plaintiff a printed book or pamphlet containing the constitution and by-laws of the association. Section 6 of article III of the constitution provided, in substance, that all members should be assessed according to their age when admitted. The defendant asked the trial court to find that said section 6 of article III so appearing in the printed constitution, had not been adopted, nor had it been approved by the supreme council, and its publication in said pamphlet was unauthorized. This request was very properly refused in view of the fact that some thousands of the pamphlet had been sent to members.

The plaintiff insists that the covenant contained in the certificate issued to him by the defendant, requiring that he should in every particular comply with all the laws, rules and requirements of the association, refers only to such laws, rules and requirements as existed at the time he entered into his contract; that any future changes or alterations made therein or additions thereto, seeking to modify or alter said contract in any respect, do not bind him.

The following cases lay down the legal principles which must control the decision in the case at bar: In *Weber* v. *Supreme Tent of the Knights of Maccabees of the World* (172 N. Y. 490) an action was brought upon a certificate of insurance. The defense interposed was that the insured took his own life and hence a recovery could not be had because at the time of his death the by-laws and rules of the order provided that should an insured commit suicide within five years from the time of admission into the order, whether sane or insane, the contract should be void. Weber's contract of insurance provided that it should be void if the insured committed suicide within one year whether sane or insane. During Weber's lifetime, after the issuance of the certificate, the defendant amended its by-laws and rules so as to extend the time from one year to five in the suicide clause. The opinion of the court near the close states: "This contract insured

Weber against unintentional self-destruction after one year and defendant had not the power to take away the right thus secured without his consent." (P. 494.)

In *Beach* v. *Supreme Tent of the Knights of the Maccabees of the World* (177 N. Y. 100, 105) this court again examined the question as to the power of insurance associations or corporations to alter the contract of insurance by amendments in the constitution and by-laws made after the certificate was issued. CULLEN, J., after the examination of the facts and authorities in that case, stated, in closing his opinion, as follows : " It is quite easy for fraternal organizations, such as the defendant, if they deem the provisions for benefits to their members tentative only and desire to have them subject to such modification as the business of the order may require, to express that in the certificate. So, in the present case, if the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide, the amendments would be applicable to existing members. But I think that nothing less explicit than this appearing in the certificate itself should be effectual for such a purpose. Fairness to persons joining the order required such plain dealing."

In *Evans* v. *Southern Tier Masonic Relief Association* (182 N. Y. 453) it was held that the beneficiary named in a certificate issued by a fraternal benefit or life insurance association to a deceased member thereof, upon which all dues and assessments, required by the by-laws of the association, have been paid, cannot be deprived of the benefit specified in the certificate by amendments to the by-laws adopted subsequent to the issuance of the certificate, notwithstanding the application for membership, upon which the certificate was issued, contained a clause by which the applicant agreed to conform in all respects to the by-laws, rules and regulations of the association then in force, or which might thereafter be adopted by its board of directors. The fact that the certifi-

cate of incorporation of the association contains a clause to the effect that the payment to the beneficiaries under the certificates of the association shall be " of such sum as the by-laws of such association may from time to time prescribe," does not distinguish the present case from the rule.   In this case it was held that *Beach* v. *Supreme Tent of the Knights of the Maccabees of the World* (177 N. Y. 100) was a controlling authority.

A recent decision of this court is *Ayers* v. *Order of United Workmen* (188 N. Y. 280).   In March, 1885, one Emory D. Fuller became a member of a local lodge of the defendant, a domestic corporation, and was to participate in the beneficiary fund of the order in the amount of two thousand dollars at the time of his death.   The insured agreed to comply with all the laws, rules and requirements of the order.   In his application for membership the insured agreed " to strictly comply with the constitution, laws and regulations which are, or may hereafter be enacted by the Supreme, Grand or Subordinate Lodge."   Sometime between 1898 and 1902 the defendant adopted a by-law which provided, in substance, that any member who should thereafter enter into the business or occupation of selling by retail intoxicating liquors as a beverage should be suspended from any and all rights to participate in the beneficiary fund.   Previous to January 1st, 1904, the insured had never engaged in the business of selling liquors, but on that day, in connection with one Hanchett, his copartner, he began to carry on a hotel at Weedsport.   The firm employed a bartender, who sold liquor in the usual way over the bar.   In June of the same year the insured died and the defendant refused to pay on the ground that he had engaged in the business of selling intoxicating liquors at retail.   The contract of insurance had been in force for more than twelve years at the time of the amendment of the by-laws as to the sale of intoxicating liquors.   The defendant having refused to pay the amount alleged to be due on the certificate, an action was brought to recover the same.   The trial court and the Appellate Division decided in favor of the plaintiff and this court

affirmed the judgment. VANN, J., writing, stated: "This case cannot be distinguished in principle from a long line of cases decided by this court" (citing them). He referred, among others, to the *Weber, Beach* and *Evans* cases already cited, and proceeded : "It is well established by these authorities 'that a general power reserved either by statute or by the constitution of a society to amend its by-laws does not authorize an amendment impairing the vested rights of members.' An amendment of by-laws which form part of a contract is an amendment of the contract itself, and when such a power is reserved in general terms the parties do not mean, as the courts hold, that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made. It would be not reasonable and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in the contract, or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses would in effect be binding upon the other party only and would leave him at the mercy of the former, and we have said that human language is not strong enough to place a person in that situation. (*Industrial & General Trust, Limited,* v. *Tod,* 180 N. Y. 215, 225.) While the defendant may doubtless so amend its by-laws, for instance, as to make reasonable changes in the methods of administration, the manner of conducting its business and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the legislature as well as the association, for the obligation of every contract is protected from state interference by the Federal Constitution. (Art. 1, § 10.) * * * The reservation of a general power to amend the by-laws, without reserving the specific right to so amend them as to restrict the occupation, did not permit an amendment in that respect, and the attempt made without the consent of

the assured was beyond the power of the defendant and absolutely void as to him. The effort was not to reduce the amount of insurance, but to destroy it altogether, unless the assured would conform to a by-law passed in violation of a vested right, for the privilege, allowed because not forbidden, of engaging in any lawful business was a vested right." (Pp. 285, 286, 287.) (See, also, *Wright* v. *Knights of the Maccabees of the World,* decided herewith, 196 N. Y. 391.)

The case at bar is well within the principles of the cases cited, and much stronger in favor of the plaintiff than the *Evans* and *Ayers Cases (supra).* In the *Evans* case the application for membership, upon which the certificate was issued, contained a clause by which the applicant agreed to conform in all respects to the by-laws, rules and regulations of the association then in force, and which might thereafter be adopted by the board of directors. In the *Ayers* case the applicant agreed in his application for membership "to strictly comply with the constitution, laws and regulations which are or may hereafter be enacted by the Supreme, Grand and Subordinate Lodge." In the case at bar the covenant in the certificate of insurance, as already pointed out, reads: "This certificate is issued upon the express condition that the said Michael Dowdall shall, in every particular while a member of said association, comply with all the laws, rules and requirements thereof." There is no suggestion that the laws, rules and requirements could at any future time be amended, or new ones enacted, so as to affect the contract. It is clear that, following the law as laid down by this court in the cases cited, the judgment appealed from must be reversed.

Referring to the statement of defendant's counsel that unless it is vested with the power to increase the amount of a single assessment, as the exigencies of the situation may require, it will be unable to continue its financial life and pay its death losses, there are two answers to this suggestion. This court said, under a different state of facts, in *Vought* v. *Eastern Building & Loan Association* (172 N. Y. 508,

518): "It is contended that if the construction we have given this contract is to prevail, it will affect the responsibility of the defendant, if it does not result in its bankruptcy. If that be true, yet it affords no proper reason why we should disregard the plain and unqualified terms and provisions of the contract. Nor does it furnish any excuse for us to disregard well-established principles of law to hold it unenforceable."

A further and persuasive answer is that plaintiff's counsel, without objection, read from the report of the supreme medical examiner of the defendant, made to the convention of the supreme council of the defendant held at Buffalo, October 9th to 11th, 1900, as follows: "We have too many deaths among new members. Of the 1,394 deaths during this term 76 died before they were members one year, and 140 more before the end of their second year, making 207 or 14.84 per cent of all our deaths among those who were members less than two years. This cannot be entirely due to accident, and certainly should not be. Many of those men must have been afflicted with some form of organic disease at the time they were examined for admission, but which they managed to conceal in some way from the local examiner, who sometimes through lack of time or his desire to increase our membership or to see the family of a friend provided for, becomes careless in making his examination, but very careful in filling out his reports to see that all the questions are answered favorably to the applicant and would necessarily be approved by the supervising medical examiner."

Plaintiff's counsel also read from the report of the supreme recorder to the same convention, as follows: "Another word in regard to the deaths of this term: Reference to the report will show that of the deaths of the past three years, 37 occurred within six months of initiation, costing $68,000; 97 occurred within one year of initiation, costing $167,000; 209 occurred within two years of initiation, costing $365,000; 283 occurred within three years of initiation, costing $485,000. Here it will be seen we have paid nearly half a million dollars

for members whose average duration of membership will not exceed twenty-two months."

This very severe arraignment of the business methods of the defendant, coming as it does from its officials in high position, goes far to establish the fact that the peril of coming insolvency is due to a failure to observe the fundamental principles of life insurance.

The judgment and order of the Appellate Division should be reversed and the judgment of the Special Term affirmed, with costs to the plaintiff in both courts.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur; GRAY, J., concurs in result.

Judgment and order reversed, etc.