Statement of the case.

HAMMOND GRANT v. INDEPENDENT ORDER OF SONS & DAUGH-
TERS OF JACOB OF AMERICA ET AL.

[52 South. 698.]

1. SUPREME COURT PRACTICE. *Agreed statement of facts.*

In reviewing the decree in a case submitted to the trial court on
an agreed statement of facts the supreme court can look only
to the facts set out in the statement.

2. INSURANCE. *Assignment of policy. Insurable interest. Wagering
policy.*

Where a life policy was valid in its inception, its subsequent as-
signment by a change of beneficiary to one without an insurable
interest was valid, and a second policy issued in affecting the
change was not a wagering policy.

3. SAME. *Fraternal order. By-laws. Retroactive operation.*

By-laws of a fraternal order should never be construed retro-
actively if other reasonable construction be possible.

4. SAME. *Same. Retroactive operation.*

Although a new charter of a fraternal order provided for dis-
position of a benefit fund as the insured should direct under
the laws of the order, and insured stipulated to abide by all
by-laws then in force or thereafter to be adopted, yet, by-laws
thereafter adopted prohibiting the naming of a beneficiary not
having an insurable interest was not retroactive so as to in-
validate a prior legal change in favor of such a beneficiary.

FROM the chancery court of Warren county.

HON. JAMES STOWERS HICKS, Chancellor.

Grant, the appellant, was complainant in the court below;
the Independent Order, etc., and one Maggie Nicholson were
defendants there. From a decree in favor of the defendant,
Maggie Nicholson, the complainant appealed to the supreme
court.

*Henry, Fox & Canizaro,* for appellant.

*T. Dabney Marshall* and *T. G. Burchett,* for appellee.

[The briefs of counsel in this case were lost or withdrawn from the record, before it reached the reporter, hence synopses of them are not given.]

WHITFIELD, C.

The original bill in this case was filed by Hammond Grant against the Independent Order of Sons and Daughters of Jacob, and Maggie Nicholson; the effort being on the part of Hammond Grant, the husband and only heir of the deceased, Maria Grant, to recover the proceeds of an insurance policy taken out by Maria Grant in this order for an amount not to exceed $700. The order paid into court the sum of $550, to be contested for by Maggie Nicholson and Hammond Grant, and it was thereupon discharged. When the case came on to be tried, certain witnesses were introduced for the complainant and examined, but not cross-examined by the respondent. The chancellor stated that he thought the case turned upon a pure question of law, and thereupon by agreement of counsel on both sides no more witnesses were introduced, although the complainant had more witnesses and the defendant had witnesses also, and it was then and there agreed for the purpose of the trial that the following were the facts of the case, to wit:

"That Hammond Grant had legally and lawfully married Maria Moore (at that time Maria Smith), the insured, in the year 1883; that he lived with her several years, and that he went to New Orleans on account of a jealous quarrel; that there was never any divorce had between him and Maria Moore, and that he never afterwards lived with her as her husband; that while complainant was in New Orleans Maria married Alex. Moore in

the year 1899; that while married to said Moore, and while com-
plainant was in New Orleans, the insured took out a policy in
favor of Moore and Susie Bayle; that afterwards Maria separ-
ated from him (husband No. 2; that is, Moore), and she surren-
dered the policy made out in Moore's and Susie Bayle's favor,
and another policy in favor of Maggie Nicholson, was taken out,
which policy is marked 'Exhibit A' to answer; that the said
Maggie Nicholson, from the time she was made beneficiary under
the said policy and up to the time of the death of said insured,
paid all dues and assessments under the said policy; that the con-
stitution and by-laws under which said policy in favor of Maggie
Nicholson was issued continued in force until October, 1906;
that afterwards a new constitution and by-laws were promulga-
ted and adopted on the 25th day of October, 1906, which consti-
tution is here marked 'Exhibit 4'; that at the time the policy was
taken out in favor of defendant there was no restriction in the
by-laws then in force as to the choice of beneficiary, as it appears
from by-laws of 1901, marked 'Exhibit 2,' but the following
provisions in the new charter were then in force, to wit: 'Section
3, Charter 1902.   To carry out its aims and objects, which are
charitable and benevolent, the corporation shall have power to
establish and maintain a benefit fund, to be paid at or upon the
death of a member in good standing, who has taken the degrees
provided by law, to his or her heirs at law, or disposed of as
he or she under the laws of the order shall direct.   And the
amount to be paid on account of any one death shall be such
part of a per capita assessment levied upon and collected from
the members of the order as may be provided by law.   But the
amount so paid shall never exceed the sum of two thousand
dollars.'   It is agreed that the defendant was not a member
of the order, and had no actual notice of the amendment to the
by-laws and constitution; that after the new constitution and
by-laws had been adopted and were in force she continued to

pay, and the order continued to receive from her, the dues on said policy. It is further agreed that the defendant Maggie Nicholson was no kin and no relation to the insured, Maria Moore, and that she was not dependent upon said insured or her estate." The learned court below, applying the law to this agreed statement of facts, found against the appellant, Hammond Grant, and dismissed his bill, and awarded the money paid in by the order to Maggie Nicholson. From this decree the appellant brings the case to this court.

The constitution and by-laws of the order are made exhibits to the pleadings. The appellant insists that the decree should be reversed for two reasons: First. Because the policy was a wagering policy, and therefore void as against public policy, though the bill makes no attack on the policy as a wagering contract. Second. Because the policy is governed, as it is insisted, by the following provision in the constitution and by-laws of the order, adopted in October, 1906, to wit: "Death benefits of the order shall be paid only on the death of such members of the order as at death hold a financial membership in the order and leave executed as required by the order on prescribed blanks of the order, and benefit certificate through a subordinate lodge or through a Royal House of King David; provided, however, one by financial membership and executed certificates of the order, both in a subordinate lodge and Royal House of King David, may have paid on his death a benefit of each of said divisions. No one shall be a beneficiary of any Jacob benefit or benefit certificate except a husband, a wife, or some legal dependent or dependents of the member of his or her (that is, the members) estate"—on the notion that this provision is retroactive. The first thing to be observed is that we are bound clearly to look only to those facts which are set out in the agreed statement of facts. If counsel below have been so unfortunate as to omit out of this agreed statement facts which they desired

considered by us, that is not a matter which we can help.    Looking to this agreed statement of facts, and the pleadings, we find nothing which indicates that this policy was intended to be a wagering policy.    The agreed statement of facts makes just this case, and nothing more, on this point: That the original policy was issued in November, 1883, payable to Alex. Moore and Susie Bayle, and that there was no restriction as to the beneficiary to be named in the constitution and laws of the order; that the second policy, payable to Maggie Nicholson, was issued in December, 1903; and that Maggie Nicholson was no kin to Maria Moore, and no relation of hers, and was not dependent upon her or her estate.    Maria Moore seems to have paid the assessments and dues until the second policy was issued, and Maggie Nicholson paid them from the time of the issuance of the second policy; but there is not a hint in the agreed statement of facts, or answer, of any fact which shows or tends to show any purpose or agreement to enter into a wagering policy.    On the contrary, it is plainly manifest from the agreed statement of facts, taken in connection with the two policies themselves, that the original policy was valid in its inception, perfectly legal in all respects, and that the second policy, so called, was in legal effect, a mere assignment of the first.    No change was made, except to name a new beneficiary.    In other words, we have, looking to the facts of the two policies and to the agreed statement of facts, an original policy perfectly valid in its inception, afterwards assigned by a change of beneficiary to Maggie Nicholson, who had no insurable interest in the life of the insured.    Now it is settled in this state by *Murphy v. Red,* 64 Miss. 614, 1 South. 761, 60 Am. Rep. 62, "that it is lawful for one to insure his own life, and after he has done so the policy becomes his own, and there is no good reason why he may not sell or dispose of it, as he may of any other chose in action, if the policy was valid in its inception."

The learned counsel for appellee, in their able brief themselves cited 1 Cooley's Briefs on Law of Insurance, p. 262, which states as follows: "One of the most important questions in life insurance is whether a policy, valid in its inception, may, in the absence of statutory provisions, be assigned by the insured or the beneficiary to one having no insurable interest in the life of the insured. The authorities are in hopeless conflict on this point." And at page 258 it is said "that the weight of authority is that one may take out insurance on his own life for the benefit of one having no insurable interest in the life insured." And the same doctrine is declared in *Dolan v. Supreme Council Catholic Mutual Benefit Association,* decided by the supreme court of Michigan in 1908, reported in 152 Mich. 266, 116 N. W. 383, also cited by the learned counsel for appellee. We may say, in passing, that this whole subject is reviewed in a most complete and masterly way in the learned note to *Metropolitan Life Insurance Co. v. Elison,* 3 L. R. A. (N. S.) 935. The authorities on this subject are very exhaustively collected and most accurately discriminated. We have this matter settled for us by *Murphy v. Red,* and since there is no evidence in the case, in the agreed statement of facts, which must control, showing that the policy was a wagering policy as originally taken out, but, on the contrary, since it is shown that it was a valid policy in its inception, its assignment to Maggie Nicholson was valid under our laws, although she had no insurable interest in the life of Maria Grant. We are of the opinion, therefore, that there is nothing in this contention on this record supporting the appellant's contention.

On the second proposition, the facts show the following state of case: The charter under which the original policy was issued contained the following provision: "To establish and maintain a benefit fund," etc., "to be paid at the death of each third degree member in good standing, to his or her family, or dispose

of as he or she directs." It is obvious that this charter imposes no restrictions whatever as to who should be the beneficiary. This charter expired by limitation in October, 1902. The order received a new charter, and in lieu of the section above quoted from the old charter the new charter provided for a disposition of the benefit fund "as he or she should direct under the laws of the order." On the 1st of January, 1904, the original policy was surrendered to the order, and the policy in controversy here issued, which merely changed the beneficiary, making Maggie Nicholson the beneficiary. In October, 1906, a new constitution and by-laws were promulgated, and under them a new provision, hereinbefore fully quoted, was made, which provided that "no one shall be a beneficiary of any Jacob benefit except a husband, a wife, or some legal dependent of the member of his or her estate." The contention of the appellant is that the change made by the constitution of October, 1902, which contained the words "under the laws of the order as the laws of the order shall direct," prohibited the naming of Maggie Nicholson, and "that the provision of the constitution of 1906 was retroactive, and hence that Maggie Nicholson, not being a dependent, etc., could not take under this policy. We do not think either of these contentions is sound. The by-laws of 1906 are manifestly prospective. Such laws are never to be held retroactive where any reasonable construction otherwise is possible. We find in Exhibit 4, the constitution, etc., adopted in 1906, October 24 and 25, at page 63, the following: "These by-laws shall take effect and be in force on and after the 1st day of January, 1907. All laws now in force, which are in conflict with these laws, adopted this the 24th and 25th days of October, 1906, are hereby repealed." It is too plain for argument under this article that the provisions of the constitution of 1906 as to the point being discussed are clearly prospective. This is not changed by the fact that the assured stipulated to abide by

all by-laws then in force or thereafter to be adopted. This last proposition is settled by the cases of *Ancient Order of United Workmen v. Brown,* 112 Ga. 545, 37 S. E. 892, and *Wist v. Grand Lodge A. O. U. W.,* 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 605. In the latter case, it is said by the court on this point: "It was contended on the part of the order that the by-law changing the classes of persons who might be designated as beneficiaries was retroactive, and was intended to annul the appointment of beneficiaries previously made, who did not belong to the classes specified in it, and that a contract of a member was to comply with and be bound by laws of future enactment as if they already existed. But it is wholly prospective in its operation, · affecting the power to appoint beneficiaries after it was passed. It applied to new members, of course, but only to such old members as changed their beneficiaries after its passage."

On this point it is said by Mr. Freeman, in the most valuable note to *Strauss v. Mutual Reserve Association,* 83 Am. St. Rep. 714, as follows: "Even where a benefit society has reserved the power to amend its by-laws, so as to affect the rights of pre-existing members, a new by-law or an amendment will not be interpreted to be retroactive in its operation, unless by its terms it is clearly intended to be so; but such law will be construed as operating only on cases that come into existence after it was passed. *Wist v. Grand Lodge,* 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 603; *Knights Templars, etc., Co. v. Jarman,* 104 Fed. 638 [44 C. C. A. 93]'; *Ancient Order United Workmen v. Brown,* 112 Ga. 545, 37 S. E. 890; *Lloyd v. Supreme Lodge,* 98 Fed. 66 [38 C. C. A. 654]; *Roberts v. Cohen,* 60 App. Div. 259, 70 N. Y. Supp. 57; *Spencer v. Grand Lodge,* 22 Misc. Rep. 147, 48 N. Y. Supp. 590; *Carnes v. Iowa, etc., Ass'n,* 106 Iowa, 281, 76 N. W. 683, 68 Am. St. Rep. 306; *Roxbury Lodge v. Hocking,* 60 N. J. Law, 439, 38 Atl. 693, 64 Am. St. Rep. 596.

Under this general rule for the construction of statutes, which is held applicable to the laws of a benefit society, or other private corporation, the effect of amendments to the by-laws of benefit societies has been materially limited, and the rights which preexisting members supposed they had, have been preserved. Laws of this character are said to be held in such great disfavor, and to be so generally condemned, that courts will not give them a retroactive application, unless this intention is expressly declared, or necessarily implied. *Wist v. Grand Lodge,* 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 603. The mere fact that a member agrees to comply with all laws of the order which may be subsequently enacted in no manner alters the rule that such laws should be given a prospective operation, in the absence of a clear intent that they should act retrospectively. *Ancient Order United Workmen v. Brown,* 112 Ga. 545, 37 S. E. 890; *Wist v. Grand Lodge,* 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 603. Unless there are imperative reasons which require a retroactive application of an amended by-law, it will not be given. *Knights Templars', etc., Co. v. Jarman,* 104 Fed. 638 [44 C. C. A. 93]."

In *Knights Templars', etc., v. Jarman,* 187 U. S. 205, 23 Sup. Ct. 111, 47 L. Ed. 139, it is said on this point: "Were the act of 1887 more ambiguous than it is as to its application to past transactions, we should still be disposed to apply the cardinal rule of construction, that where the language of an act would bear two interpretations equally obvious, that one which is clearly in accordance with the provisions of the constitution is to be preferred." In Cooley's Briefs on Insurance, vol. 1, p. 710, it is said: "But even under such an agreement [one to be bound by laws enacted in the future] it is obvious that the members will not be bound by such laws as indicate on their face that they apply only to certificates thereafter to be issued"—citing the case we have just above quoted from in 187 U. S. 205, 23

Sup. Ct. 111, 47 L. Ed. 139; and this is the principle which we think clearly applies here. It could not reasonably have been the purpose of the constitution and by-laws of 1906 to apply to a change of beneficiary in the case of certificates issued prior to the passage of said constitution and by-laws. And on page 705 of the same authority it is said: "The legislative acts of a mutual benefit association are presumed to be intended to operate prospectively only, and will not be given a retroactive operation, unless there are imperative reasons demanding such construction"—citing a number of authorities.

Nor does the provision of the constitution and laws of 1906 (page 41 of Exhibit 4) at all affect this construction. That provision, taken in connection with the other provisions of the constitution and by-laws of 1906, clearly shows that they are prospective wholly, and in no way affect the certificate issued to Maggie Nicholson before their passage. It becomes unnecessary, in view of the fact that we hold these provisions in the constitution of 1906 to be prospective only, to discuss the question whether, if they had been meant to be retroactive, they could be held to be reasonable and valid. On that point the following authorities may be profitably consulted: See, specially, *Dodwall v. Supreme Council, etc.,* 196 N. Y. 405, 89 N. E. 1075, and *Wright v. Knights of Maccabees, etc.,* 196 N. Y. 391, 89 N. E. 1078; *Modern Woodmen of America v. Wieland,* 109 Ill. App. 340; Cooley's Briefs on Insurance, 710 *et seq.,* especially paragraph 1, page 711, and paragraph N, p. 715, and paragraph O, p. 719; *Wist v. Grand Lodge A. O. U. W.,* 22 Or. 271, 29 Pac. 610, 29 Am. St. Rep. 603; and most particularly see the very valuable note to *Strauss v. Mutual Reserve Association,* 83 Am. St. Rep. 706, and the main case to which the note is appended, and *Stewart v. Lee Mutual Fire Ins. Ass'n,* 64 Miss. 499, 1 South. 743, in harmony with the *Strauss case* in 126 N. C. 971, 36 S. E. 352, 54 L. R. A. 605, 83 Am. St. Rep. 699; *Spencer*

*v. Grand Lodge, etc.,* 22 Misc. Rep. 147, 48 N. Y. Supp. 590, affirmed in 53 App. Div. 627, 65 N. Y. Supp. 1146. In the case of *Ward v. David and Jonathan Lodge,* 90 Miss. 116, 43 South. 302, no property right was affected by the amendment. In the case of *Dornes v. Supreme Lodge,* 75 Miss. 466, 473, 23 South. 191, it will be seen in the brief of the learned counsel for appellee that the deceased insured was not a member of the endowment rank when the suicide amendment was adopted, and did not make his first application for membership until February 8, 1894, more than one year after the adoption of the amendment. The fact that the amendment was the law of the order before he became a member of the endowment rank, makes a very different case from this one.

The constitution and by-laws of 1906 in this case affected only those members who became such after the adoption of said constitution and by-laws.

PER CURIAM. The above opinion is adopted as the opinion of the court; and, for the reasons therein stated, the decree is affirmed.

*Affirmed.*