## CARNES v. FRANKLIN LIFE INS. CO. et al.

No. 7892.

Circuit Court of Appeals, Fifth Circuit.

Feb. 4, 1936.

Ed C. Brewer and Fred H. Montgomery, both of Clarksdale, Miss., for appellant.

J. L. Roberson, Sam C. Cook, Greek P. Rice, and J. M. Talbot, all of Clarksdale, Miss., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The Franklin Life Insurance Company, an appellee (herein referred to as the insurer), filed its bill of interpleader (28 U.S.C.A. § 41 (26) making defendants thereto Lillian L. Carnes, the appellant, and P. F. Williams, herein referred to as the appellee. The bill made an exhibit thereto a policy of insurance, No. 118060, in the sum of $5,000 on the life of Henry Cooper Carnes, issued by the insurer in January, 1918, and, after alleging the death of the insured while that policy was in force, that there was due on the policy, when proof of death was received on November 9, 1933, $3,225.11, being the amount of the policy less the amounts of a loan thereon and a premium note, and that appellant and appellee each claimed the amount due on the policy, offered to pay that amount into court, and prayed that appellant and appellee be decreed to interplead, and that the insurer be discharged from all further liability under said policy. By answer to the bill, appellant claimed the proceeds of the policy as the beneficiary named therein, and appellee by answer claimed those proceeds by virtue of a written instrument, dated February 24, 1933, executed by the insured, and set out below.

The facts are not in dispute. When the policy was issued, the insurance was made payable to insured's executors, administrators, or assigns. It contained the following provisions:

"The Insured may change any designated Beneficiary at any time during the continuance of this Policy, subject to the written consent of the Assignee, if any, by filing with the Company a written request accompanied by this Policy, such change to take effect upon the indorsement of the same on the Policy by the Company, whereupon all interest of the former Beneficiary shall cease. If no Beneficiary shall survive the Insured the Policy shall be payable to the Insured's Executors, Administrators or Assigns. * * *

"No assignment of this policy shall be binding upon the company unless filed in duplicate at the Home Office, one to be retained by the company and the other to be returned. The company assumes no responsibility for the validity of any assignment."

Pursuant to the above first set out provision, the insured changed the beneficiary three times; the last of such changes being made in September, 1927, when the policy was made payable to appellant, the wife of the insured. In January, 1933, the insured had two other policies, each for $5,000, on his life, issued by the insurer. Loans had been made by the insurer on each of the three policies; the amount of the loan on the policy now in question being about $1,700. All the policies would lapse unless premiums and interest were paid by the 15th or 16th of February, 1933. In January, 1933, the insured applied to the Delta Grocery & Cotton Company, of Clarksdale, Miss., through appellee, its manager, for the loan of an amount sufficient to make the payments due on the policies in February, 1933. On account of financial conditions then existing, that application was denied. Then the insured made a personal appeal to appellee, who was a friend of the insured, for a loan of the amount required to keep in force the two policies other than the one now in question; the insured then stating to appellee that in any event he was going to drop the policy now in question, and, if appellee wanted that policy, insured would give it to appellee, and appellee could pay the premiums or drop it, whatever he wanted to do, if appellee would make arrangements to keep alive the other two policies. After considering this proposition several days, appellee told the insured that he would undertake to keep the two other policies alive for the benefit of the insured, and accept the policy now in question if he could arrange with the insurer to pay premiums in monthly installments. After the appellee had been informed by the insurer that it would be satisfactory to pay the premiums in monthly installments, the appellee agreed to keep the other two policies alive and to accept the policy now in question. Thereupon the insured delivered that policy to the appellee, and executed and delivered to the appellee the following instrument:

"To Be Executed in Duplicate and Both Sent to the Home Office of the Company.

"For Value Received, I hereby sell, transfer and assign to P. F. Williams of Clarksdale, State of Mississippi, executors, administrators, successors, and assigns, policy No. 118060 issued by The Franklin Life Insurance Company of Springfield, Illinois, upon the life of Henry Cooper Carnes, the Insured, and all right, title and interest therein including the right to the Assignee herein to exercise any and all options, rights, and privileges in said policy given to the Insured and/or beneficiaries, and to execute a valid surrender of said policy and collect and receipt for the proceeds thereof at any time for the sole use and benefit of said assignee; subject to the conditions of said policy and to the rules and regulations of the Company, and to any lien, charge, or indebtedness now or hereafter existing against or on account of said policy in favor of said The Franklin Life Insurance Company. The undersigned warrant the validity and sufficiency of the foregoing assignment, and that no proceedings in bankruptcy have been taken by or against, nor has any assignment for the benefit of creditors been made by the undersigned or either of them.

"In Witness Whereof, I have hereunto set my Hand and Seal this 24th day of February, 1933.

"H. C. Carnes, Insured. [Seal]
"Henry Cooper Carnes, [Seal]."

The form of that instrument was furnished by the insurer, and it was executed and delivered to the insurer in accordance with its regulations. On the two other policies appellee made payments aggregating $205.82. On the policy now in dispute appellee made payments aggregating $73.20, with the result that that policy, as well as the other two, was in force when the insured died. With reference to those payments the appellee testified:

"The only amounts that Mr. Carnes owed the witness at any time were for money the witness advanced to the insurance company to keep alive the two policies not involved in this litigation. The witness produced his ledger which showed that he made the payments above referred to, and that the payments for the two policies not involved were charged to Mr. Carnes. This ledger likewise showed payments that the witness made to the insurance company on the policy involved in

this litigation, being policy 118060. None of these payments with reference to the last mentioned policy were charged to Mr. Carnes, but all of them, on the policy involved in this litigation, were made by the witness for his own account; that said policy had been assigned to him by Mr. Carnes, with the understanding that same was to be the sole property of the witness; that the way the matter of the payment of the premiums on the two policies not involved in this litigation was handled was that Mr. Carnes, during February, 1933, signed and delivered to the Clarksdale agency of the Franklin Life Insurance Company, a series of notes; the first note was filled out for the total amount due, and was payable in thirty days; the balance of the notes were blank as to amount and date of payment; when the first note became due, the witness made a payment thereon for Mr. Carnes; the insurance company then filled out one of the blank notes for the balance due; then, when that note became due, the witness would make another payment sufficient in amount to keep the two policies alive for a month; that note would be taken up and another note filled out for the balance due, and as the notes fell due from time to time, payments would be made by the witness to keep same alive and another note would be filled out for the balance in each instance; that all of these notes were signed by Mr. Carnes; that Mr. Carnes did not give notes, however, for the premiums due or to become due on the policy involved in this litigation which had been assigned to the witness; that the premiums falling due in 1933 on the policy given to him were handled by the witness giving his personal notes therefor and making payments thereon from month to month until the date of Mr. Carnes' death; that this was the policy which Mr. Carnes had assigned or given to the witness, being the one that he had decided not to attempt to keep in force."

After the insured's death, his son paid appellee $184.62 on the amount paid by appellee on the other two policies. On a book kept by appellee he charged, under the heading, "(Owes me H. C. Carnes policies)," the amounts paid on the other two policies. Appellee stated that those amounts bore no interest. On the same page of that book were entered, under the heading: "(Mine) H. C. Carnes," the amounts paid by the appellee on the policy

now in question. The appellee stated that, near the last-quoted heading, he had written, some time after February, and prior to October, 1933, either the word "speculating" or "gambling," which word he erased, "that he did not recall when he had erased it, but he erased it from his book for the reason that he didn't think such words should appear on one's books; that he didn't recall how long the word remained on there; that he used the words on there to describe that transaction as being a speculative proposition, as it was speculative about whether witness would get back the money that he advanced on the two policies that Mr. Carnes desired to keep alive." At the time appellee received the policy now in question he knew that the insured's health was not good. Appellee stated:

"He knew that Mr. Carnes had had an operation in 1926 that wasn't a success, and he had been advised that Mr. Carnes had had an attack of influenza in December, 1932; that when Mr. Carnes first visited the witness in January, 1933, he advised Mr. Carnes to go to some physician for a diagnosis and for treatment, and that he afterwards learned that Mr. Carnes went to Dr. Sanford in Memphis, and he stated that Mr. Carnes, sometime during the month of February, advised him that Dr. Sanford had directed that he go to a sanatorium; that his lungs were affected; that he learned that Mr. Carnes had gone to the sanatorium but was never advised as to the result of his examinations there; that Mr. Carnes told him that the doctors at the sanatorium advised him to go to North Carolina when the weather got warmer, and that according to his recollection Mr. Carnes did go to North Carolina in either May or early June."

Testimony showed that, when the insured was examined by a specialist in February, 1933, that examination disclosed that insured was suffering from advanced tubercular lungs and with a tubercular larynx, that in May, 1933, insured became a patient in a sanatorium at Asheville, N. C., where tubercular patients were treated, and that insured died there in October, 1933. The appellee was not related by blood or marriage to the insured, and insured was not indebted to appellee in any amount on account of the policy now in question. The court found that the assignment to appellee was not made to secure a debt to him. It seems that the evidence was not inconsistent with a finding that appellee's agreement to keep the other two policies alive was a consideration for the assignment to appellee of the policy now in question. By the decree rendered on pleadings and proof, the entire proceeds of the policy in question were awarded to appellee.

■ For the appellant it was contended that the assignment of the policy to appellee was invalid by reason of appellee's lack of insurable interest in the life of the insured. This contention might find support in expressions contained in the opinion in the case of Warnock v. Davis, 104 U.S. 775, 26 L.Ed. 924, but for the explicit decision in the later case of Grigsby v. Russell, 222 U.S. 149, 32 S.Ct. 58, 59, 56 L.Ed. 133, 36 L.R.A.(N.S.) 642, Ann.Cas. 1913B, 863. The last-cited case was a contest between the personal representatives of the insured and one who at no time had an insurable interest in the life of the insured, claiming under an assignment of the policy made by the insured. In the last-cited case the policy in question was made payable to the insured's administrators or to an assignee. There was no question as to the validity of the policy when it was issued. After two premiums on the policy had been paid and when a third premium was overdue, the insured, being in want and needing money for a surgical operation, sold the policy to Grigsby, who had no interest in insured's life, in consideration of $100 and Grigsby's undertaking to pay the premiums due or to become due. The court, after stating that the policy was perfectly good when it was issued, ruled that the assignment was valid. The following are extracts from the opinion rendered in that case:

"The danger that might arise from a general license to all to insure whom they like does not exist. Obviously it is a very different thing from granting such a general license, to allow the holder of a valid insurance upon his own life to transfer it to one whom he, the party most concerned, is not afraid to trust. The law has no universal cynic fear of the temptation opened by a pecuniary benefit accruing upon a death. * * *

"Coming to the authorities in this court, it is true that there are intimations in favor of the result come to by the circuit court of appeals. But the case in which the strongest of them occur was one of the type just referred to, the policy having

been taken out for the purpose of allowing a stranger association to pay the premiums and receive the greater part of the benefit, and having been assigned to it at once. Warnock v. Davis, 104 U.S. 775, 26 L.Ed. 924. On the other hand, it has been decided that a valid policy is not avoided by the cessation of the insurable interest, even as against the insurer, unless so provided by the policy itself. Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251. * * * It is enough to say that while the court below might hesitate to decide against the language of Warnock v. Davis, there has been no decision that precludes us from exercising our own judgment upon this much debated point. It is at least satisfactory to learn from the decision below that in Tennessee, where this assignment was made, although there has been much division of opinion, the supreme court of that state came to the conclusion that we adopt, in an unreported case,—Lewis v. Edwards, December 14, 1903. The law in England and the preponderance of decisions in our state courts are on the same side."

The instant case is unlike the case of Warnock v. Davis, supra, and is like the case of Grigsby v. Russell, supra, in that the policy in question in the instant case was perfectly valid when it was issued many years before the execution of the challenged assignment, and long before the insured contemplated an assignment of the policy; it being apparent that that assignment was made in such circumstances as not to be by way of cover for a wager policy. Rylander v. Allen, 125 Ga. 206, 53 S.E. 1032, 6 L.R.A.(N.S.) 128, 5 Ann.Cas. 355. Many decisions of the Supreme Court of Mississippi support the validity of the assignment in question. Murphy v. Red, 64 Miss. 614, 1 So. 761, 60 Am.Rep. 68; Grant v. Independent Order of Sons & Daughters of Jacob, 97 Miss. 182, 52 So. 698; First-Columbus National Bank v. D. S. Pate Lumber Co., 163 Miss. 691, 141 So. 767; Lamar Life Insurance Co. v. Moody, 122 Miss. 99, 84 So. 135; Bank of Belzoni v. Hodges, 132 Miss. 238, 96 So. 97. As to decisions in some jurisdictions against the validity of such an assignment as the one in question in this case, it is enough to say that such decisions are inconsistent with decisions which are controlling in this court.

 Another contention made in behalf of the appellant was to the effect that an assignment does not operate as a change of beneficiary where a beneficiary has been designated, and a change of beneficiary has not been made in the manner prescribed by the provision of the policy dealing with the subject of change of beneficiary. The effect of the above set out instrument executed by the insured and delivered to the appellee went beyond merely assigning the policy mentioned therein to a new owner. By express language it conferred on appellee "all right, title and interest" in the policy referred to, "including the right to the Assignee herein to exercise any and all options, rights, and privileges in said policy given to the Insured and/or beneficiaries, and to execute a valid surrender of said policy and collect and receipt for the proceeds thereof at any time for the sole use and benefit of said assignee; subject to the conditions of said policy and to the rules and regulations of the Company, and to any lien, charge, or indebtedness now or hereafter existing against or on account of said policy in favor of said The Franklin Life Insurance Company." The just quoted part of that instrument had the effect of changing the beneficiary; the right conferred on appellee "to execute a valid surrender of said policy and collect and receipt for the proceeds thereof for the sole use of said assignee" being wholly inconsistent with appellant continuing to be the beneficiary under the policy. The part of the "Change of Beneficiary" provision of the policy dealing with the subject of the manner of effecting such change was a provision for the benefit of the insurer, and was subject to be waived by the insurer. When informed of the insured's desire to assign the policy now in question, the insurer furnished the form used by the insured in making the assignment, and that assignment, executed in duplicate, was delivered to, and accepted by, the insurer, which, pursuant to an above set out provision of the policy, retained one of the duplicates and returned the other to appellee. The insured's consent to waive compliance with the part of the "Change of Beneficiary" provision of the policy dealing with the subject of the method of effecting such change was clearly manifested by the insurer furnishing for execution the form of instrument whereby a change of beneficiary could be effected in a manner different from that prescribed in the "Change of Beneficiary" provision, and by treating that instrument after it was executed, both while insured was alive and after his death,

805

as effective according to its terms, by accepting it in duplicate, entering one copy thereof in its assignment record and returning the other to appellee, and by setting up that instrument in its interpleader bill as valid and as the basis of the claim alleged to be asserted by appellee. The conduct of the insurer being wholly inconsistent with the existence of an intention on its part to insist on a compliance with the requirement of the "Change of Beneficiary" provision as to the manner of effecting such change, the insurer must be held to have waived compliance with that requirement. Bank of Belzoni v. Hodges, supra; 2 Cyclopedia of Insurance, Couch, § 320.

Under the policy now in question, the insured had an unrestricted right to change the beneficiary in any way assented to by the insurer. This being so, the appellant had no vested right in the policy, and she is without right to challenge the above set out instrument whereby the insured, with the consent of the insurer, assigned that policy to the appellee, and conferred on the latter unrestricted power over the policy, including the right "to execute a valid surrender of said policy and collect and receipt for the proceeds thereof at any time for the sole use and benefit of said assignee." Kincaid v. New York Life Ins. Co. (C.C.A.) 66 F.(2d) 268; Chase National Bank v. United States, 278 U.S. 327, 334, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Williams v. Penn Mut. Life Ins. Co., 160 Miss. 408, 133 So. 649.

The court did not err in awarding to appellee the amount owing on the policy now in question. The decree is affirmed.