The judgment and conviction should be affirmed.

CULLEN, Ch. J., EDWARD T. BARTLETT and WILLARD BART-
LETT, JJ., concur with WERNER, J.; GRAY and HISCOCK, JJ.,
concur with HAIGHT, J.

Judgment of conviction reversed, etc.

----

DENNIS L. WRIGHT, Appellant, v. THE KNIGHTS OF THE
        MACCABEES OF THE WORLD, Respondent.

Insurance (life) — mutual benefit associations — amendments to
    constitution or by-laws, which nullify or cut down benefits to
    which a beneficiary has become entitled under his contract, are
    void and of no effect even where the right to amend has been
    expressly reserved.

The defendant, a mutual fraternal benefit association, issued to plaintiff a
    certificate of insurance providing that upon his death an assessment
    upon the membership should be paid to the person therein named, upon
    the proviso that plaintiff shall have "in every particular complied with
    the laws of the order in force or that may hereafter be adopted." Plain-
    tiff's application provided among other things that the laws of the order
    "now in force or that may hereafter be adopted shall form the basis of
    this contract;" that neglect to pay any assessment or dues fixed by said

laws should vitiate the certificate; that the laws of the order "now in force or that may hereafter be adopted are made part of the contract," and that he agrees to conform to and be governed thereby.

The contract between the parties consisted of the application, certificate and the by-laws in force when the certificate was issued. Seven years after the contract was made, the by-laws were changed by the defendant, without the consent of the plaintiff, so as (1) to increase the monthly assessments and to require a *per capita* tax together with a fraternal tax, the provision for additional assessments being still continued in force; (2) to abolish the right of a member, upon reaching the age of seventy years, to relief from the payment of any further dues or assessments; (3) to abolish the right of a member on reaching that age to receive annually one-tenth of the sum named in his certificate; and (4) to so modify the disability clause as to entitle a member to the bene- fit of the annual payment of one-tenth, only in case he should continue to pay precisely the same as if he had not become disabled, and even to continue to pay after he had received the full amount called for by his certificate. Plaintiff, having declined to pay the increased rates under such amendments, was suspended by defendant, which suspension involved the forfeiture of his right to participate in the benefit fund, and this action is brought by him for reinstatement. *Held*, that bene- fits cannot be reduced, or new conditions forfeiting benefits added, by an amendment to the by-laws even when the general right to amend is expressly reserved. Hence, the amendments which assume to cut down the benefits to which the plaintiff became entitled by his contract are void and of no effect.

Since the plaintiff entered into the contract on the faith of the promise by the association that he should "pay the same rate hereafter so long as he remains in good standing in the order," which he had the right to assume to be a covenant not to increase the rate, his right to pay at the old rate was a vested right, immune from change by amendment in the absence of a specific reservation to amend in that particular. The increase in the rate of assessment falls under the same condemnation of the law as a reduction in the amount of benefits.

*Wright* v. *Knights of Maccabees*, 128 App. Div. 883, reversed-

(Argued October 28, 1909; decided November 23, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered September 25, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The defendant is "a mutual, fraternal benefit insurance association," organized under the laws of the state of Michi-

gan, with its principal office in the city of Port Huron in that state and with branches or subordinate bodies, known as tents, in various places in many states, one of which, located in the city of Watertown, New York, is known as Tent No. 418. The plaintiff, a resident of Watertown, became a member of the defendant and of said tent in the month of June, 1897. In January, 1905, he was suspended by the defendant and the suspension, if lawful, involved the forfeiture of his right to participate either in the benefit fund of the association or in the fraternal privileges of his tent. Claiming that such suspension was in violation of law, he brought this action to procure his reinstatement as a member in good standing, the restoration of his certificate of insurance and an injunction against the defendant restraining it from changing the contract or the dues and assessments thereunder.

The history of the controversy, which has been before the courts for several years, may be found by consulting the case as reported in 48 Misc. Rep. 558; 119 App. Div. 914; 122 App. Div. 904; 128 App. Div. 883.

Upon the last trial the Special Term dismissed the complaint on the merits without costs and the Appellate Division affirmed, one of the justices dissenting and one not sitting.

*John Conboy* for appellant. The contract is the measure of the rights and liabilities of the parties. (*People* v. *Grand Lodge*, 156 N. Y. 537.) The defendant had no power to so change the contract as to increase the amount the plaintiff should pay to it without his consent. (*Sattler* v. *Hallock*, 160 N. Y. 297; *Wood* v. *Sheehan*, 68 N. Y. 368; *Vought* v. *E. B. & L. Assn.*, 172 N. Y. 515; *Gillett* v. *Dank*, 160 N. Y. 555; *Parish* v. *Produce Exch.*, 169 N. Y. 47; *Ayers* v. *United Workmen*, 188 N. Y. 286; *Beach* v. *K. of M.*, 177 N. Y. 104; *Webber* v. *K. of M.*, 172 N. Y. 490; *Kent* v. *Q. M. Co.*, 78 N. Y. 159; *Evans* v. *S. T. M. R. Assn.*, 182 N. Y. 453.)

*De Vere Hall, B. A. Field* and *D. D. Aitken* for respondent. Where a member of a fraternal beneficiary association has

agreed in advance to be bound by after-enacted by-laws, a subsequent by-law increasing rates of assessment is binding upon him. (*Mock* v. *Royal Arcanum*, 121 App. Div. 174; *Wright* v. *Knights of Maccabees*, 122 App. Div. 904; *Dowdall* v. *C. M. B. Assn.*, 123 App. Div. 913; *Wineland* v. *Knights of Maccabees*, 148 Mich. 608; *Williams* v. *C. M. B. Assn.*, 152 Mich. 1; *Polk* v. *M. R. F. L. Assn.*, 207 U. S. 310; *Reynolds* v. *Supreme Council*, 192 Mass. 150; *Crosby* v. *M. R. F. L. Assn.*, 38 Misc. Rep. 708; *Supreme Lodge* v. *Knight*, 117 Ind. 489; *Fullenweider* v. *Supreme Council*, 180 Ill. 621.) The provision of the by-laws that "he shall pay the same rate of assessment thereafter so long as he remains continually in good standing in the order," is not a limitation upon the power of defendant to adopt adequate rates. (*Mock* v. *Royal Arcanum*, 121 App. Div. 474; *Dowdall* v. *C. M. B. Assn.*, 123 App. Div. 913; *Williams* v. *C. M. B. Assn.*, 152 Mich. 1; *Dornes* v. *Supreme Lodge*, 75 Miss. 466; *Blasingame* v. *Royal Circle*, 111 Ill. App. 202; *Supreme Lodge* v. *Kutscher*, 179 Ill. 340; *Supreme Lodge* v. *Knight*, 117 Ind. 489; *Fullenweider* v. *Supreme Council*, 180 Ill. 621; *Reynolds* v. *Supreme Council*, 78 N. E. Rep. 129; *Conner* v. *Supreme Commandery*, 117 Tenn. 549.) The provision of the by-law covering benefits at seventy years of age was repealable. (Bacon on Ben. Societies [3d ed.], §§ 185, 186; *Beach* v. *Knights of Maccabees*, 177 N. Y. 100; *Wineland* v. *Knights of Maccabees*, 148 Mich. 608; *Parish* v. *N. Y. P. Exch.*, 169 N. Y. 34; *Weber* v. *Knights of Maccabees*, 172 N. Y. 90; *Langan* v. *Supreme Council*, 174 N. Y. 266; *Shipman* v. *P. H. Circle*, 174 N. Y. 398; *Simons* v. *Supreme Council*, 178 N. Y. 263.) Repeal of the by-laws containing the provision that upon attaining seventy years of age or becoming disabled the member should be exempt from the payment of further assessments and dues was valid. (*Wineland* v. *Knights of Maccabees*, 148 Mich. 608; *Detroit St. Ry. Co.* v. *Guthard*, 51 Mich. 580; *Louisville W. Co.* v. *Clark*, 143 U. S. 1; Bacon on Ben. Societies [3d ed.], §§ 91a, 92, 185; *Boyd* v. *Southern Association*, 41 So. Rep. 164; *Louisville* v. *Clark*, 143 U. S. 1.)

VANN, J.   This appeal was heard on the judgment roll, no case having been made and none of the evidence or exhibits being printed, except as portions of the latter appear in the findings of the trial court.   The following facts, found by the court, present the questions that we are called upon to decide : In his application to become a member of the defendant, dated June 9th, 1897, the plaintiff stated : " I hereby agree that   *   *   *   the laws of the Supreme Tent of the Knights of the Maccabees of the World, now in force or that may hereafter be adopted, shall form the basis of this contract for beneficial membership   *   *   * ; that any   *   *   *   neglect to pay any assessment which shall be made by the Supreme Tent within the time provided by the laws thereof, or neglect to pay the dues fixed by said laws, in the manner and at the time provided by said laws, or the by-laws of the tent to which I may belong, shall vitiate my benefit certificate and forfeit all payments made thereon   *   *   *.   This application and the laws of the Supreme Tent now in force, or that may hereafter be adopted, are made a part of the contract between myself and the Supreme Tent ; and I, for myself, and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

On the 19th of June, 1897, the defendant issued to the plaintiff a certificate or policy of insurance stating in part as follows : " This certifies that Sir Knight Dennis L. Wright has been regularly admitted as a member of Watertown Tent No. 418, located at Watertown, State of New York, and that in accordance with and under the provisions of the laws of the order he is entitled to all the rights, benefits and privileges of membership therein, and that at his death one assessment on the membership, not exceeding in amount the sum of $1,000, will be paid as a benefit to Mary Wright   *   *   * provided he shall have in every particular complied with the laws of the order in force or that may hereafter be adopted."

The plaintiff, who at the date of the certificate was of the age of fifty years, complied with the rules of the defendant and paid all dues, assessments and charges against him until and

including the month of December, 1904. According to the
laws of the association in force at the time of plaintiff's
admission to membership the annual dues were three dollars
per year, and in January, 1898, with his acquiescence, they
were changed to four dollars per year, and he thereafter paid
at that rate. According to said laws when the plaintiff was
admitted each monthly assessment was $1.40, and, as the
court found, "it was further agreed that 'he shall pay the
same rate of assessment thereafter so long as he remains con-
tinually in good standing in the order.'" Provision was
made, however, that in case one assessment per month should
not be sufficient to pay death and disability claims as they
should occur, additional assessments might be made from time
to time to pay such claims.

At the time the plaintiff joined the defendant the by-laws
provided that "Any member holding a benefit certificate
who shall become totally and permanently disabled from any
cause, not the result of his own illegal act, to perform or
direct any kind of labor or business, or who shall arrive at
the age of seventy years, and who has paid all legal dues and
assessments since the date of his initiation to the date of such
disability or period in life, shall be relieved from the payment
of any further dues or assessments levied under these laws, or
the by-laws of the tent of which he is a member, and shall be
entitled to receive from the disability fund annually one-
tenth part of the sum for which his benefit certificate is
issued, provided, however, that the aggregate of such install-
ments received by him shall in no case exceed the sum speci-
fied in such certificate."

In July, 1904, the defendant, without the consent of the
plaintiff, so amended its by-laws as to provide that "On and
after January 1, 1905, all present life benefit members of the
association who are then fifty-five years of age, or over
* * * shall pay three dollars per month for each $1,000
of life benefits carried." The amendment also provided
for a *per capita* tax of ten cents per month and a "fraternal
tax of fifty cents a year," upon every member of the associa-

tion.   Additional assessments at the new rate were authorized to pay death and disability claims whenever the amount of the life benefit fund was not sufficient for the purpose.   On January 1, 1905, the plaintiff had passed the age of fifty-five years.

The amended laws further provided that "A life benefit member of the association who shall become totally and permanently disabled by other than his own illegal, reckless or fool-hardy act from performing or directing any and all kinds of labor or business, whether such directing is his customary occupation or not, and he is in good standing in the association at the time of such disability, may receive total and permanent disability benefits, provided that such member shall continue to pay all monthly rates, additional assessments, dues and fines which he would have been required to pay if such disability had not occurred.   \* \* \*   A member so disabled may receive from the life benefit fund annually one-tenth part of the amount named in his life benefit certificate, which amount shall be paid in quarterly payments, provided that such installments shall be paid only during the good standing of such member in the association and the aggregate of such installments shall in no case exceed the amount in his life benefit certificate."

As the plaintiff declined to pay at the rate as increased by the amendments of 1904, he was suspended and owing to the suspension, according to the by-laws, he forfeited absolutely all his rights derived from membership.   In January, 1905, he duly tendered to the defendant in due time the sum of $2.40, which included all that he was owing at the old rate of $1.40 per month, and $1.00 dues for the quarter beginning on the first of the month, but the defendant refused to accept less than $4.10, the amount due according to the new rate.

The court further found that according to the defendant's experience the rate assessed at the time the plaintiff became a member " at twelve assessments per year is not sufficient for its perpetual maintenance and without an additional number of assessments to pay death and disability claims as they occur, it will be compelled to go out of business within eight

een to twenty-five years from September, 1905;" and "that the increase in the rate, or the number of assessments, was necessary for the continued existence of the defendant."

The contract between the parties consisted of the application, certificate and the by-laws in force when the certificate was issued. Seven years after the contract was made the by-laws were changed by the defendant, without the consent of the plaintiff, so as (1) to increase the monthly assessments from $1.40 to $3.00 and to require a *per capita* tax of ten cents per month together with a fraternal tax of fifty cents per annum, the provision for additional assessments being still continued in force; (2) to abolish the right of a member, upon reaching the age of seventy years, to relief from the payment of any further dues or assessments; (3) to abolish the right of a member on reaching that age to receive annually one-tenth of the sum named in his certificate and (4) to so modify the disability clause as to entitle a member to the benefit of the annual payment of one-tenth, only in case he should continue to pay precisely the same as if he had not become disabled, and even to continue to pay after he had received the full amount called for by his certificate.

The question presented for decision is whether the reservation by the defendant of a general power to amend its by-laws, without specifying in what respects, authorized it to amend them in all the particulars above mentioned. In other words, can such an association amend a specific clause under a general power?

The amendments involve not only a substantial increase in the rate of assessment, but also a substantial decrease ·in the amount of benefits. While the member is now required to pay more than twice as much as before, he is to receive in return materially less than before. He is deprived altogether of the benefit to which he was entitled upon reaching the age of seventy and is deprived of a material part of the benefit to which he was entitled in case of disability. While it was specifically provided that he should " pay at the same rate of assessment thereafter," the rate of assessment is now more than

doubled. The benefits were specified and the rate was specified and can such a contract of insurance be so amended by the insurer, under a general power, as to take away from the insured without his consent an essential part of what he specifically contracted for? If the defendant had stated in the body of the certificate that it reserved the right to amend by increasing assessments and reducing benefits, the plaintiff would have had notice of what he might expect, but, in that event, it is doubtful whether he would have taken out the insurance, yet the defendant is forced to claim that the contract now has precisely the same meaning and effect as if it had been drawn in that form. The general reservation doubtless authorized the defendant to amend its by-laws so as to cover subjects not therein specifically provided for and even in other respects, which would not essentially impair the contract as made. But the subjects of assessments and benefits were specifically provided for, each being defined in express terms so that the member knew what he was bound to pay and what he was entitled to receive. After he had acted upon those specifications in the contract by paying at the rate provided thereby for seven years, the plan of insurance was changed from term to life, while the assessments were so advanced and the benefits so reduced as to make a new contract of much less value to him than the old.

Much has been written in various jurisdictions upon the subject of amendments to by-laws, but we shall confine our review to our own decisions, which we regard as conclusive in principle. They show determined and consistent progression.

More than thirty years ago it was held by this court, in a carefully considered case, that, even when the power to amend is reserved by the charter of a business corporation, a by-law could not be repealed so as to impair rights which had been given and had become vested by virtue of such by-law. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 182.)

In a later case, brought against the defendant now before us, the act of self-destruction insured against according to the by-laws was held beyond the power of amendment, so as to

provide that such an act should not be insured against.
(*Weber* v. *Supreme Tent of the Knights of Maccabees of
the World*, 172 N. Y. 490.)

In *Shipman* v. *Protected Home Circle* (174 N. Y. 398,
404) there was no provision in the certificate or by-laws against
death by suicide, but acting under a power reserved by
express consent an amendment was adopted making the cer-
tificate void, in case the insured " died by suicide, felonious
or otherwise, sane or insane." The court, speaking through
Judge WERNER, said : " As the contract was silent upon the
subject of self-destruction by the insured while insane, death
from that cause was clearly within its terms. Upon the
execution of the contract the insured, therefore, acquired a
fixed and vested right to insurance covering that risk. No
subsequent amendment of the by-laws could affect that right
without the express assent of the insured." Citing the
*Weber* case.

In another case, against the present defendant, Judge
CULLEN, speaking for all the judges but one, said : " A refer-
ence to the laws of the order informed the plaintiff at the
time he joined the order of the character of the disability
which entitled him to receive half the amount of the certifi-
cate, and there was no provision therein to the effect that
the payment was not to be immediate but in annual install-
ments. As said by Judge GRAY in *Langan* v. *Supreme
Council American Legion of Honor* (174 N. Y. 266): ' It
was beyond the power of the defendant to affect the obliga-
tion expressed in the certificate, without the consent of its
holder.' The constitution and laws of the defendant consti-
tute a book of over ninety pages and the provision authorizing
an amendment of the endowment laws is found not in the
endowment laws, but in a brief section of the constitution."
After reviewing certain cases he continued : " Under the
doctrine of these cases we think that the obligations assumed
by the defendant in its certificate of membership should not
be impaired by provisions of the constitution and laws of the
order to which the attention of the member might never be

called, or, at least, they should not be cut down under the reservation of the power to amend. It is quite easy for fraternal organizations, such as the defendant, if they deem the provisions for benefits to their members tentative only and desire to have them subject to such modification as the business of the orders may require, to express that in the certificate. So, in the present case, if the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide, the amendments would be applicable to existing members. But I think that nothing less explicit than this appearing in the certificate itself should be effectual for such a purpose." (*Beach* v. *Supreme Tent of the Knights of the Maccabees of the World*, 177 N. Y. 100, 104.)

We soon had the subject before us again in a case where the application contained a promise similar to that made by the plaintiff in this case "to conform in all respects to the by-laws, rules and regulations of the association now in force or which may hereafter be adopted;" and the charter provided for the payment to the beneficiary "of such sum as the by-laws of such association may from time to time prescribe." By an amendment of the by-laws an attempt was made to cut down the benefit specified in the certificate. Judge HAIGHT, who had dissented in the *Beach* case, wrote for all the judges and held that the case then in hand could not be distinguished from that case. He said: "The opinion in that case received the approval of all of the members of this court except myself. I entertained the view that under the contract entered into in that case the right to amend the by-laws was reserved, and the certificate holder, or those for whose interest he procured the same, did not acquire an absolute vested right under existing by-laws, but that they were subject to the reasonable amendments that should thereafter be found necessary and proper. But a contrary view was adopted by my associates, and it, therefore, becomes my duty to submit to the

views of the majority." After holding that the two cases
were the same in principle, he continued : "It is true that
there is a variation in the certificates. In the *Maccabees* case
the certificate provided for payments to be made in case of
total disability. In this case the certificate contains no provi-
sion of that character, but I am unable to see that this distin-
guishes the two cases in principle. In the *Maccabees* case the
beneficiary would ultimately receive the full amount of his
certificate. In this case the beneficiary gets only about one-
third of the amount of the certificate. We think that the
former case is controlling upon us. * * *." (*Evans* v.
*Southern Tier Masonic Relief Association*, 182 N. Y. 453,
456, 459.)

All these cases, among others, were cited and relied upon
in *Ayers* v. *Ancient Order of United Workmen* (188 N. Y.
280). In that case power to amend was expressly reserved
and an amendment provided that the certificate should become
void if the insured should thereafter "enter into the business
or occupation of selling, by retail, intoxicating liquor as a
beverage." All the judges who sat united in holding the
amendment void, in the absence of a reservation of the spe-
cific right to so amend the by-laws as to restrict the occupation
or business of the insured, upon the ground that it violated a
vested right. Among other things it was said : "An amend-
ment of by-laws which form part of a contract is an amend-
ment of the contract itself, and when such a power is reserved
in general terms the parties do not mean, as the courts hold,
that the contract is subject to change in any essential particu-
lar at the election of the one in whose favor the reservation
is made. It would be not reasonable and hence not within
their contemplation, at least in the absence of stipulations
clearly specifying the subjects to be affected, that one
party should have the right to make a radical change in the
contract, or one that would reduce its pecuniary value to the
other. A contract which authorizes one party to change it
in any respect that he chooses would in effect be binding upon
the other party only and would leave him at the mercy of the

former, and we have said that human language is not strong enough to place a person in that situation. (*Industrial & General Trust, Limited,* v. *Tod,* 180 N. Y. 215, 225.) While the defendant may doubtless so amend its by-laws, for instance, as to make reasonable changes in the methods of administration, the manner of conducting its business and the like, no change can be made which will deprive a member of a substantial right conferred expressly or impliedly by the contract itself. That is beyond the power of the legislature as well as the association, for the obligation of every contract is protected from state interference by the Federal Constitution." (See, also, *Parish* v. *New York Produce Exchange,* 169 N. Y. 34; *Langan* v. *Supreme Council American Legion of Honor,* 174 N. Y. 266; *Simons* v. *American Legion of Honor,* 178 N. Y. 263; *Dowdall* v. *Catholic Mutual Benefit Assn.,* 196 N. Y. 405.).

These cases establish the rule that benefits cannot be reduced, or new conditions forfeiting the benefits added by an amendment of the by-laws, even when the general right to amend is expressly reserved. They are controlling, therefore, so far as all the amendments now in question are concerned, except that providing for an increase in the rate of assessments. Following the authorities cited we hold that the amendments which assume to cut down the benefits to which the plaintiff became entitled by his contract with the defendant, are void and of no effect.

I am, personally, of the opinion that the amendment increasing the rate of assessment is also void, for I can see no difference in principle between reducing benefits and increasing the amount to be paid for benefits. The plaintiff entered into the contract on the faith of the promise by the association that he should " pay at the same rate thereafter so long as he remains continually in good standing in the order," which he had the right to assume and the defendant knew that he would assume, was a covenant not to increase the rate. The certificate states that " he is entitled to all the rights, benefits and privileges " provided by the laws of the order, which are thus made a part

of the certificate.   Hence the right to pay at the old rate was one of the rights provided for and that he contracted for.   It was a vested right, immune from change by amendment, in the absence of a specific reservation of power to amend in that particular.   On the average, such contracts would be impaired by doubling assessments to the same extent as by cutting off one-half of the benefit.   The price to be paid by the plaintiff for insurance is as essential a part of his contract as the amount of insurance to be paid to him by the defendant on the maturity of the policy.   Whether the one is increased or the other proportionately decreased makes no difference in principle, or in the final result.   By either method the pecuniary value of the contract, which is property, would be reduced one-half.

The defendant seeks to sustain its action in increasing the rate of assessment, by invoking the general power to amend and pleading that the exercise thereof was essential to its existence.   The court did not find, as matter of fact or law, that a reduction of benefits was necessary, nor did it find as a fact that an increase in the rate of assessments was necessary, but found that "the increase in the rate, *or* the number of assessments, was necessary for the continued existence of the defendant."   Necessity bears only on the question whether the amendments are reasonable.   While they were desirable as a matter of policy, they were not necessary, for the old by-laws gave the defendants power to raise all the money needed for every purpose by simply increasing the number of assessments.   It is true that a great increase in this respect might reduce the membership, still that did not make an increase in the rate of assessments necessary, for it cannot be necessary for a corporation to violate its contract in order to preserve its existence.   (*Vought* v. *Eastern B. & L. Association,* 172 N. Y. 508, 518.)   Moreover, the existence of the defendant, according to the findings, is not now threatened, nor will it be until after the lapse of from eighteen to twenty-five years, and no one can foresee the changes that will take place in the mean time.   If the wonderful growth of the defendant, as stated by

its counsel, continues, the danger now apprehended as to what may take place a quarter of a century hence, may wholly disappear before that period expires.

I think that an increase in the rate of assessment falls under the same condemnation of the law as a reduction in the amount of benefits. A judgment requiring the defendant to perform according to the contract as made and not as amended, yet requiring the plaintiff to pay according to the contract as amended and not as made, would contain inconsistent provisions, one of which would necessarily violate the principle upon which the other was founded.

The judgment should be reversed and a new trial granted, with costs to abide event.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.