HANNES v. NEDERLAND ISRAELITISH SICK FUND.

(Supreme Court, Appellate Division, First Department. July 11, 1912.)

BENEFICIAL ASSOCIATIONS (§ 5*)—MUTUAL BENEFIT INSURANCE—BY-LAWS—
POWER TO AMEND.

 A mutual benefit insurance corporation, which maintained a sick fund, could, as against a particular member, amend an amendment of its by-laws so as to reduce the amount of benefits to which he was entitled, so long as the amount which he actually received equaled or exceeded the amount due under the by-laws as they existed when he became a member.

 [Ed. Note.—For other cases, see Beneficial Associations, Cent. Dig. §§ 5, 6; Dec. Dig. § 5.*]

 McLaughlin and Laughlin, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term, First Department.

Action by Isidor Hannes aganst the Nederland Israelitish Sick Fund. From a determination of the Appellate Term affirming a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Alfred D. Lind, of New York City, for appellant.
Myron Butler, of New York City, for respondent.

INGRAHAM, P. J. The facts in this case are stated in the opinion of Mr. Justice McLAUGHLIN. It seems to me clear that the contract between the plaintiff and the defendant was that created by the by-laws as they existed at the time the plaintiff joined the society. It is conceded that the defendant had no right without the consent of the plaintiff to abrogate or modify that contract by an amendment of its by-laws, but it is going much beyond any of the reported cases to hold that, because a corporation changes its by-laws after a person has become a member and accepted the conditions there imposed, such an amended by-law becomes a new contract which a corporation is powerless to change. When the plaintiff joined this corporation, the by-law provided that, in the event of a member's sickness being declared incurable by the physician of the society, such member shall receive the sum of $3.50 per week for 12 successive months, and should thereupon be entitled to no further sick benefits. That was the contract, and it is conceded that the plaintiff has received a much greater sum from the defendant than the contract as between himself and the defendant required. In March, 1902, this by-law was amended by striking out the provision that a member inflicted with an incurable sickness was to be entitled to no further sick benefits than the $3.50 per week for 12 successive months. It seems to me clear that by this amendment there was no new contract created. It provided for a gratuity in addition to that provided for in the contract between the plaintiff and the defendant, and, so long as such an amended by-law was in force, it may be conceded that the plaintiff would be entitled to receive the weekly payments as therein provided. In each of the cases cited in the opinion of Mr. Justice McLAUGHLIN the right of a member of such a corporation is based upon the contract which arose between the parties under the by-laws of the corporation and the certificate of membership at the time the member joined the society. What was decided by the Court of Appeals in Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838, was that the original contract made upon the member joining the society must control, and a member's rights secured thereby could not be impaired by virtue of a subsequent amendment to the by-laws to which the member did not assent, and in Dowdall v. Catholic Mut. Benefit Association, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N. S.) 417, it was expressly held that the contract of insurance cannot be changed by any act of the defendant, as such contracts are protected by the state and federal

Constitutions, and all the cases cited by the court upon which these cases are decided are based upon the original contract entered into when the member joined the society. Certainly these cases are not authorities for the proposition that a new contract arose between each member of the association and the association itself upon each change of by-law which the corporation could not thereafter modify or affect. It is conceded that the amendment of 1905 did not deprive the plaintiff of any benefit which he could have been entitled to receive under the by-laws as they existed at the time he became a member. I can see nothing in the relations between the parties which at all limited the right of the defendant to amend the amendment so as to reduce the amount that a sick member was entitled to receive so long as the amount which the plaintiff did actually receive was equal to or in excess of the amount due under the by-law as it existed at the time he became a member of the association.

If this view is correct, it is evident that the determination of the Appellate Term was wrong, and that the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). Action to recover from a mutual benefit insurance corporation an amount claimed to be due under its by-laws for "sick benefits."

The sole question presented by the appeal is whether the defendant had the power to amend its by-laws in such a way as to reduce a sick benefit to which the plaintiff would otherwise have been entitled. The defendant's certificate of incorporation provided that its purpose was to collect funds from members, and apply them to their relief in case of death, sickness, or other casualty "as may hereafter be regulated by the by-laws." The plaintiff became a member in 1883, has since paid his dues and been in good standing. When he joined the association, he signed a statement to the effect that he would be "guided" by the by-laws then in existence or thereafter adopted. At that time the by-laws provided that a member should receive for sick benefits—

"in case of sickness, the services of a doctor, medicine and sick benefit of seven dollars per week for a period not exceeding thirteen weeks within the period of fifteen months; and at the rate of three dollars and fifty cents per week for an additional thirteen weeks during such period of fifteen months. * * * In the event a member's sickness is then declared incurable by the physician of the society, such member shall receive the sum of three dollars and fifty cents per week for twelve successive months; providing the sick member shall not be able to do any light work or business and shall thereupon be entitled to no further sick benefits. * * *"

This by-law was amended in March, 1902, by striking out the last paragraph relating to incurable members. The effect of the amendment was to allow incurable members the same sick benefits to which they would be entitled in case their illness had only been temporary; that is, $7 a week for 13 weeks and $3.50 a week for another 13 weeks in each recurring period of 15 months. In 1904, while the by-laws were in force as thus amended, the plaintiff became and has

since remained incurably sick and unable to work. On September 18, 1905, the by-laws were further amended by providing that "no member shall receive more than $500 sick benefit during his term of membership."

The question presented is whether the limitation of $500 to which the plaintiff never consented, though he had due notice of the meeting at which it was adopted, applies to him. If it does, then he has received all he is entitled to, because he received more than $500 prior and also more than $500 since the amendment. He has not, however, received within the period of 15 months immediately preceding the commencement of this action $7 a week for 13 weeks and $3.50 a week for another 13 weeks, as provided by the by-laws under the amendment of 1902, and which was in force when he became incurably ill. He had a recovery in the Municipal Court of the city of New York for $56, and on appeal to the Appellate Term the same was affirmed, and by permission defendant appeals from such determination to this court.

The law now seems to be well settled that a mutual benefit association cannot by an amendment of its by-laws decrease the benefits which it has contracted to give or furnish to its members when they became such, even though a general power to amend is expressly reserved. Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 31 L. R. A. (N. S.) 423, 134 Am. St. Rep. 838; Dowdall v. Catholic Mutual Benefit Ass'n, 196 N. Y. 405, 89 N. E. 1075, 31 L. R. A. (N. S.) 418; Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347. Here, no certificate of membership was issued, and the contract between the parties was embodied in the charter of the corporation and the by-laws as they existed when plaintiff became a member. Hellenberg v. District No. 1 of I. O. of B. B., 94 N. Y. 580; Bishop v. C. L. E. O. of M. A., 112 N. Y. 627, 20 N. E. 562. The charter provides that the funds are to be applied "as may hereafter be regulated by the by-laws," and, when the plaintiff became a member, the by-laws then in force fixed his rights. His agreement to be "guided" by the by-laws which might thereafter be adopted had reference to matters of administration, and not to his rights which were then fixed and vested. Beach v. Supreme Tent, etc., 177 N. Y. 100, 69 N. E. 281; Evans v. Southern Tier, etc., 182 N. Y. 453, 75 N. E. 317.

This view is not supported by, but is somewhat in conflict with, Berg v. Badenser, etc., 90 App. Div. 474, 86 N. Y. Supp. 429. In that case, as in the present, there had apparently been no certificate of membership issued, and, after the plaintiff became a member, the association amended its constitution so as to decrease the sick benefits; the decrease being reasonable in view of the financial condition of the association. The amendment was held valid, in view of the financial condition of the association, even though it did not appear that any right to so amend had been specifically reserved. The decision in that case was cited with approval in Lewin v. Koerner Benevolent Association, 125 App. Div. 91, 109 N. Y. Supp. 101. But in the more recent cases of Wright v. Knights of Maccabees, supra, and Dowdall v. Cath-

olic Mutual Benefit Association, supra, the Court of Appeals held, reversing two of the decisions relied upon in Lewin v. Koerner Benevolent Association, supra, that the by-laws could not be amended so as to deprive one of benefits accorded to him at the time he became a member, and this irrespective of the financial condition of the association, unless there were a specific reservation to the effect that such amendments might be made.

In the Wright Case the rule laid down in Ayers v. Ancient Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020, is quoted with approval. It is:

"An amendment of by-laws which form part of a contract is an amendment of the contract itself, and, when such a power is reserved in general terms, the parties do not mean, as the courts hold, that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made. It would be not reasonable and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in the contract or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses would, in effect, be binding upon the other party only, and would leave him at the mercy of the former, and we have said that human language is not strong enough to place a person in that situation."

The amendment of 1905, did not, it is true, as pointed out by the defendant's counsel, deprive the plaintiff of any benefits which he would have been entitled to receive under the by-laws as they existed when he became a member. Under such by-laws, he would have been entitled, by reason of incurable illness, to at most $7 a week for 13 weeks, $3.50 per week for an additional 13 weeks, and $3.50 a week for 12 months thereafter, making in all $318.50, and he has already received largely in excess of that. But the amendment of 1905, however, did deprive him of benefits to which he was entitled under the amendment of 1902, which was in effect at the time he became incurably ill. The benefit to which he became entitled when he became incurably ill, under the by-laws then in force, could not thereafter be decreased by amendment. His rights had at that time become fixed, and it did not lie with the defendant to deprive him of them without his consent. Under such by-laws he was entitled to receive $136.50 during each recurring period of 15 months. This he was deprived of by the amendment of 1905 limiting the total amount which he was entitled to receive to $500.

It seems to me the same rule should be applied to the 1902 amendment that would be applicable to the by-laws as existing when he became a member of the association. The amendment of 1902 was assented to by the plaintiff. He paid his dues as provided therein, and accepted the benefits to which he was entitled thereunder. This was, in effect, an amendment to the original contract. Ayers v. Ancient Order of United Workmen, supra. He did not consent to the amendment of 1905, and the fact that the association thereafter paid him for a certain period more than he would have been entitled to under the amendment of 1902 cannot be tortured into a consent on his part that the amendment of 1905 might be made. He could not be de-

prived of the rights accorded to him under the original contract, without his consent, and I am unable to see, for the same reason, how he can be deprived of the rights given to him under the amendment of 1902, which was in effect at the time when he became incurably ill.

The determination of the Appellate Term is therefore affirmed with costs.

LAUGHLIN, J., concurs.