Dorothea L. Zea, Respondent, v. Andreas F. Werner, Appellant, Impleaded with Janet R. Werner, His Wife, and Others, Defendants.— Judgment affirmed, with costs. No opinion. Hirschberg, Burr, Thomas, Carr and Rich, JJ., concurred.

---

## FOURTH DEPARTMENT, JULY, 1912.

HENRY J. SIMMELINK, Respondent, v. THE SUPREME COURT OF THE INDEPENDENT ORDER OF FORESTERS, Appellant.

*Insurance — fraternal benefit organization — increase of rates.*

Appeal from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 15th day of April, 1911.

Judgment reversed and new trial granted, with costs to appellant to abide event. Held (1) that the action is prematurely brought; (2) that the right of the defendant to increase its rates is controlled by the laws of Canada and not by the laws of this State. All concurred, except Spring and Kruse, JJ., who dissented in an opinion by Spring, J.

SPRING, J. (dissenting): The defendant, a fraternal insurance organization on the assessment plan, originally incorporated in the Province of Ontario, was reincorporated in 1889 by special act of the Parliament of the Dominion of Canada, and with a constitution and laws duly adopted by the Supreme Court, which is the governing body of the society, with its head office in the city of Toronto. Its scheme of insurance is carried on by means of subordinate courts or branches established in conformity to the act mentioned, and it was authorized to establish lodges and carry on its business in the State of New York, and that privilege has continued unrevoked. In 1890 the plaintiff, with others in the city of Rochester, applied for a charter for a local court in that city, which was granted, and the usual certificate or contract of membership was issued to the plaintiff April twenty-third of that year. At that time he was thirty-five years of age, and the contract provided that upon reaching his seventieth birthday he should receive $100 and a like sum on each succeeding birthday until the sum of $1,000 was paid, also a fixed sum to him in case of total and permanent disability, and $1,000 to his widow or personal representatives on satisfactory proof of his death. The only requirement in order that a member might reap these benefits was that he should "be a member in good standing in the Order and not disqualified according to the Constitution, Laws, Rules and Regulations of the Supreme Court." The

monthly assessment of the plaintiff was seventy-eight cents, which he paid regularly, and was in good standing at the time of the commencement of this action. The subject of increasing the assessment rates had been considered at the annual conventions of the defendant, which consisted of delegates from the subordinate courts. In the month of May, 1908, a meeting was called to convene in Toronto June sixteenth of that year with the avowed purpose of increasing the rates, which, according to the plan designed, would raise the assessment of the plaintiff to $1.65 per month; and this action was commenced June fourteenth of that year to enjoin permanently the defendant from making said increase, and a temporary injunction was granted. The general plan was adopted in June, 1908, in pursuance of the call for the convention, became effective in October of that year and has since been in operation. The plaintiff challenges the power of the organization to add to the assessment which was fixed at the time he joined the defendant. When he was asked to become a member, and at the time of his admission, there was delivered to him a pamphlet to be used in soliciting others to unite with the order, which contained this provision: "The monthly assessments, which are payable invariably in advance, may be paid monthly, quarterly, semi-annually or annually, at the convenience of the member; and they do not increase as the member grows older, but remain the same so long as he remains continuously in 'good standing' in the Order. The right is reserved, however, as required by law, to levy extra assessments should the necessities of the Order ever require it." The constitution fixed the schedule of monthly rates, and that of a man of thirty-five at seventy-eight cents; and at the end of this table is added: "And shall pay the same rate of assessments thereafter so long as he remains continuously in good standing in the Order and in the same class." There is no distinct provision in the constitution, certificate or application, and they together constitute the contract, authorizing the defendant to increase the assessment rates. There is a provision providing a method for amending the general laws of the order, but it does not refer specifically to any addition to the assessment charges, and it would be a strained construction to include that authority within the compass of this provision. (*Ayers* v. *Order of United Workmen*, 188 N. Y. 280.) In the application which the plaintiff, with others, presented for the charter, which was granted, is contained this clause: "We do further severally agree, to be bound by all the provisions of the Constitutions and Laws of the Order, as enacted from time to time by the Supreme Court of the Independent Order of Foresters." Apparently it was not intended by the founders of the society to increase the rates at all. The pamphlet so indicates and the language of the constitution, already quoted, was intended to limit the assessment to that established when the member joined the organization. The right to levy an extra assessment, if "the necessities of the Order" require it, was probably deemed sufficient for any emergency which might arise, but that authority gave no power to increase the amount which any member must pay to meet the assessment. That sum was supposed to be unchangeable. The

fact that the organization reserved the right to levy an extra assessment implies that it did not possess any other authority than this expressly reserved. Provisions similar to those mentioned have been recently and frequently construed by the Court of Appeals, and invariably adversely to the right to increase the assessment charges, and in some cases where the urgency and propriety of the action taken were apparent. The following are a few of these cases: *Wright* v. *Knights of Maccabees* (196 N. Y. 391); *Dowdall* v. *Catholic Mut. Benefit Assn.* (Id. 405); *Ayers* v. *Order of United Workmen* (188 id. 280); *Beach* v. *Supreme Tent K. of M.* (177 id. 100). In the first case cited, the application and the laws of the defendant were made part of the insurance contract, and the member agreed in his application that the laws of the order "now in force, or that may hereafter be adopted, shall form the basis of this contract for beneficial membership." The assessment rates were increased, and the trial court in effect found that the increase in the rate of the number of assessments was necessary for "the continued existence of the defendant." The sum to be paid was stated in the contract and provided that the member should "pay at the same rate thereafter so long as he remains continually in good standing in the Order." In its important features that scheme of insurance and its contract are closely like those in the present case. The court held the agreement as to the maintenance of the rate was a covenant, adding: "Hence the right to pay at the old rate was one of the rights provided for and that he contracted for. It was a vested right, immune from change by amendment, in the absence of a specific reservation of power to amend in that particular." The prohibition, therefore, upon a mutual benefit association to increase its rates or substantially to change the benefits accorded to the member by his insurance contract, unless there is a specific authority to make the change, would seem to be well established by the recent authorities in this State. It is the contention of the appellant that if these authorities are pertinent on the proposition stated they have no application to the defendant as it is a Canadian corporation and whoever becomes a member of it is amenable to the laws of the Dominion of Canada, so far as they regulate the affairs of this body. By the original act creating the defendant (52 Vict. chap. 104, § 11) the Parliament of Canada in the most general language reserved the power to enact legislation pertaining to the affairs of the society. In 1896 the act was amended (59 Vict. chap. 51), and by subdivision 6 of section 4 the defendant was required to raise by assessments on its members from time to time an amount adequate to meet all its obligations arising from its certificates. A mortuary fund was a part of the plan of insurance for the sum of $5,000 upon the life of any member, and a license was granted to the defendant in pursuance of the amending act of 1901 (1 Edw. VII, chap. 100, § 5), and which license was to be renewable from year to year as long as the society complies with the requirements of the Insurance Act, and with its undertaking to maintain a fund sufficient to carry out its mortuary plan in addition to sick and funeral benefits, etc. The trial court found: "That the defendant had undivided surplus funds applicable to the payment of death benefits, in