## DOSCHER v. VANDERBILT.

(Supreme Court, Appellate Term, First Department. July 7, 1916.)

1. INSURANCE ⚫713—MUTUAL ASSOCIATIONS—CREATION OF CONTRACT.

Compliance by applicants for membership in a mutual life assurance association with the requirement of its by-laws to pay an initial fee and to sign the by-laws, together with the constitution and by-laws of the association, created a contractual relationship between the association and its members.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1851; Dec. Dig. ⚫713.]

2. INSURANCE ⚫728—PERSONS ENTITLED TO BENEFITS—ASSIGNEE.

After the death of a member of a mutual life association who has complied with its constitution and by-laws, an assignee of the member had a good legal right to demand, receive, and sue for the amount contracted to be paid by the association at the death of a member.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1873, 1875, 1876, 1977–1980; Dec. Dig. ⚫728.]

3. INSURANCE ⚫813—ACTIONS—PARTIES.

The assignee of a deceased member of a mutual life association has the election to join in one suit all the members of the association for the agreed benefits, or, as authorized by Code Civ. Proc. § 1919, to sue the president of the association.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1994; Dec. Dig. ⚫813.]

4. INSURANCE ⚫725—CONTRACT—CHANGE OR ANNULMENT.

A valid contract between a member of a mutual life association and the association for a life indemnity could not be abrogated or changed without the consent of the member.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1869; Dec. Dig. ⚫725.]

⚫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE &⟶707—MUTUAL ASSOCIATION—DISSOLUTION.

   A resolution, at a meeting of members of a mutual life association, that the benefits of living members are terminated, and that the association be continued only to collect from the members and distribute to the assignees of deceased members any death benefits that may have accrued and remain unpaid, is not a resolution to dissolve the association, and does not relieve it from liability under a contract with a member who dies subsequently.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1844; Dec. Dig. &⟶707.]

6. INSURANCE &⟶707—MUTUAL ASSOCIATION—DISSOLUTION.

   That a large number of members of a mutual life association met and passed a resolution to dissolve would not be binding on a large majority of the members, who did not attend and did not consent to the dissolution.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1844; Dec. Dig. &⟶707.]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Anna Doscher against Edgar Vanderbilt, as President of the Teachers' Mutual Life Assurance Association. From a judgment for plaintiff for $540.41, defendant appeals. Affirmed.

Argued March term, 1916, before LEHMAN, PENDLETON, and WHITAKER, JJ.

William J. Moran, of New York City, for appellant.

Appell & Taylor, of New York City (George H. Taylor, Jr., of New York City, of counsel), for respondent.

WHITAKER, J.   The action is brought under section 1919 of the Code of Civil Procedure against the defendant "as president of the Teachers' Mutual Life Assurance Association." The action is based upon the claim of a joint or several liability of the members of the association to pay the plaintiff the sum of $500 on account of the death of her sister, who was a member of the association at the time of her death and who had been such a member in good standing for 45 years; the decedent having made the plaintiff her assignee.

The pleadings were oral. The complaint as it appears in the record is as follows:

"This is an action on a contract brought by Anna Doscher, the plaintiff, as the beneficiary or assignee designated upon the books and records of the defendant association in the sum of $500, being the amount of a claimed insurance benefit which accrued to Margaret Doscher and to her beneficiary upon her death, under the constitution and by-laws of the defendant."

The answer was likewise oral, and consisted of a general denial, and the further defense that the association of which the defendant Vanderbilt was alleged to have been president had dissolved and gone out of existence.

The plaintiff is a sister of the late Margaret Doscher, who died April 26, 1915. Deceased joined the association when it was formed. The object and purpose of the so-called insurance plan of the association are stated as follows in its constitution:

"We whose names are undersigned, desiring to organize and maintain the Teachers' Mutual Life Assurance Association, whose object shall be to give to each and every member of the same the opportunity to leave at death to a properly designated assignee a sum hereinafter to be named, do hereby agree to the following constitution for said association."

Article 1 of the by-laws prescribes the qualifications of members and provides that:

"Any teacher in good health employed in a day school * * * desiring to become a member shall apply to * * * or secretary, who shall cause such applicant to sign the constitution and pay an application fee of fifty cents. * * *"

Article 2 provides as follows:

"Members must make all proper provision to meet the prompt payment of assessments as they are levied."

Articles 3, 4, and 7 provide as follows:

"Article 3. *Forfeiture of Membership.* If any member shall omit to pay any assessment within fifteen days after payment is requested by the collector, such collector shall send a second request by registered letter, with a copy of articles 11 and 111 of the by-laws inclosed. Within three days after the return of the letter, or the receipt for its delivery, if assessment, together with a penalty of ten cents to pay for postage of second notice, be not paid, then the membership of such person shall be forfeited, and the department collector shall notify the ward collector of the fact and date of forfeiture, and the ward collector shall give a like notice to the financial secretary who shall promptly notify the former member of the fact and date of such forfeiture.

"Any person whose membership has been forfeited or who shall have resigned may be again admitted as a member by the financial secretary upon paying all the assessments such person would have been liable to pay if the previous membership had not been forfeited. Every application for readmission must be accompanied by the usual health certificate or a doctor's certificate.

"Article 4. *Assessments.* Upon receiving from the treasurer notice of the decease of a member, the financial secretary shall notify each ward collector of such death and of the levy of an assessment of fifty (50) cents to be collected from each surviving member of the several department collectors.

"The money in excess of five hundred dollars ($500) shall be allowed to accumulate and whenever it shall amount to one thousand and twenty dollars ($1.020) there shall be no call for assessment on the occurrence of a death."

"Article 7. *Payments to Assignees.* Upon application the sum of five hundred dollars ($500) shall be paid to the assignee of a deceased member except when the death shall have occurred during the vacation—in which case the payment shall be made immediately after the reopening of the schools. In case of the death of a member who is indebted to the association for assessments as provided in article 1 of the constitution the amount of such indebtedness shall be deducted from the amount to be paid to the assignee."

It is unnecessary to refer to the other portions of the by-laws. It is sufficient to state that they show a complete system for the government and regulation of the association.

The directors, it seems, being of the opinion that the plan and system of conducting the association was not financially sound, and that the number of members was not increasing sufficiently to insure the continued success of the association, called a special meeting of the association for January 30, 1915. In the notices of the meeting, insurance was offered to the members in a standard life insurance company

in which all the members might become insured by complying with certain conditions. The notice stated that:

"The benefits of the present Teachers' Life Assurance Association will lapse and become ineffective on or before a date set by the directors."

At the meeting held pursuant to this notice the following resolutions were passed:

"Whereas, it is the judgment of our officers and managers that this association is not upon a safe, sound, and enduring basis as respects its benefit or insurance features, and that to secure to the surviving members thereof and to those who may hereafter join this organization certain definite insurance benefits that this organization be reorganized and that the members concur therein; and,

"Whereas, with respect to such insurance, it is the judgment of all that this organization be reorganized into a group of insured having relations with the Travelers' Insurance Company:

"Now, therefore, be it resolved, a quorum of the board of managers of this organization being present and concurring therein, that the benefits of all living members in this organization be and they hereby are terminated, and are hereby declared to have lapsed and become ineffective as of this 30th day of January, 1915; and it is further

"Resolved, that this association be continued only for the purpose of collecting from the members and distributing to the assigns of deceased members any death benefits that may have accrued and remain unpaid. * * * "

It was further resolved that no ward collector shall dismiss from membership any member whose name was on the roll December 1, 1914. The following resolution was also adopted:

"Resolved, that a special committee of three members, to be appointed by the president, be selected to act with the regular auditing committee, and that such combined committee be instructed to audit the accounts of all fiscal officers and agents of this association, and that they report thereon to the president with all convenient speed, and as soon as possible after all claims for accrued death benefits shall have been satisfactorily adjusted, and that if such accounts be found correct, and the balance, if any in the hands of any of them be turned over and paid in the manner prescribed by said combined committee, that when so paid, or such accounts be found to be correct, that thereupon each such officer or agent be and he is hereby released and discharged from any and all liability or duty to this association or any member thereof."

There are two questions to be determined in order to establish the right of the plaintiff to sustain the judgment she has recovered. The first question is, of course, as to whether or not there was a mutual contract between the plaintiff's assignor and the association.

[1] Article 1 of the by-laws requires all applicants for membership before admission to pay an initiation fee and to sign the by-laws. Compliance with this requirement by the members created a contractual relationship between them and there is no doubt that there was a valid binding contract between the plaintiff, the association and every member thereof. The constitution and by-laws constituted such a contract. Hannes v. Nederland, etc., Fund, 152 App. Div. 140, 136 N. Y. Supp. 742; Ayers v. Grand Lodge, etc., 188 N. Y. 280, 80 N. E. 1020. The substantial and inducing clause of this contract required the association to pay to a member's assignee (providing such member kept her part of the contract; that is, complied with the by-laws) the sum of $500 upon her death.

[2] After the death of Margaret Doscher, the plaintiff, being her

assignee, had a good legal right to demand, receive, and sue for said sum of $500. Under the by-laws there was an express agreement, each member with all the others, that each would pay a sum sufficient in the aggregate to pay to the assignee of a deceased member his or her proportionate share of the total sum of $500. Each member was legally liable in at least such an amount. Gray v. Haviland, 42 App. Div. 626, 58 N. Y. Supp. 1060; McDonald v. Mutual Benefit Ass'n, 29 Hun, 87.

[3] The plaintiff had her election to join in one suit all the members of the association, or to invoke section 1919 of the Code of Civil Procedure and sue the defendant Vanderbilt as president. I think, therefore, the first question must be answered in the affirmative.

The second question to be determined is: Did the association actually dissolve; and, if so, had it the legal right to dissolve in the manner alleged, and could it legally repudiate all liability to the plaintiff?

[4] There being a valid contract between the plaintiff and the defendant association, the contract could not be abrogated or changed without the consent of the plaintiff. The authorities are uniform that no action on the part of the association without the consent of the plaintiff, which would impair the obligation of the contract or injuriously affect the rights of the plaintiff thereunder would be valid, as was stated by Judge Vann in Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020, where the defendant sought by change of the by-laws to restrict the character of the business or employment in which the members should be allowed to engage:

"An amendment of by-laws which form part of a contract is an amendment of the contract itself and when such a power is reserved in general terms the parties do not mean, as the courts hold, that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made. It would be not reasonable, and hence not within their contemplation, at least in the absence of stipulations clearly specifying the subjects to be affected, that one party should have the right to make a radical change in the contract, or one that would reduce its pecuniary value to the other. A contract which authorizes one party to change it in any respect that he chooses would in effect be binding upon the other party only, and would leave him at the mercy of the former, and we have said that human language is not strong enough to place a person in that situation."

If the defendant could not make a substantial change in its contract with plaintiff without plaintiff's consent, it can hardly be said that it could abrogate and repudiate the contract arbitrarily. The defendant's attorney claims that plaintiff—

"had no vested right to have the old association maintained forever in the form in which it existed before the dissolution."

The answer to that contention is that the extent of the obligation assumed by a person to a contract, in the absence of fraud, will furnish no ground for its repudiation or abrogation in a court of law; and while it is true that plaintiff had no right to insist upon the continuation of the association "forever," she did have the right to insist upon the performance of its contract with her. It is true that, while the by-laws contemplate the right of the members to resign, they do not authorize a part of the members, even though it be a large num-

ber of them, to change the character of the organization, form a new organization, and repudiate the contract with plaintiff.

[5, 6] An examination of the minutes of the meeting shows that, as matter of fact, there was no resolution passed to "dissolve." In fact the organization was to continue under different plans. The "organization" was to be "reorganized" with the "concurrence" of the members, and it was expressly resolved that no member should be dismissed from "membership whose name was on the roll December 1, 1914." The only part of the resolutions passed which would indicate that the members at the meeting intended to "dissolve" is as follows:

"Resolved, that this association be continued only for the purpose of collecting from the members and distributing to the assigns of deceased members any death benefits that may have accrued and remain unpaid."

This resolution, read in connection with the other portions of the minutes of the meeting, indicate that the organization was not "dissolved," but reorganized, and its members turned over to "the Travelers' Insurance Company." But, even had a large number met and passed a resolution to "dissolve," this would not have been binding on the large majority of the members, who did not attend and who did not consent. The number of members was 1,300 or over, and the number attending the meeting about 300; and the notice of the meeting did not contain an express notice that the question of dissolution would be brought before the meeting for action thereon.

It appears by the record that the association now has property which it refuses to apply towards the payment of plaintiff's claim. This action, therefore, is, I think, perfectly proper at this time for the purpose of reaching that property. The judgment does not bind the individual property of the defendant Vanderbilt, nor the individual property of the members of the association, and there must be a subsequent proceeding brought, in the event that the judgment cannot be satisfied from the property of the association. See Code of Civil Procedure, §§ 1921, 1922; McCabe v. Goodfellow, 133 N. Y. 90, 30 N. E. 728, 17 L. R. A. 204.

The judgment should be affirmed, with $25 costs. All concur.